## UNITED STATES *v.* NEW YORK.*

No. 238. Argued February 2, 1942.—Decided March 2, 1942.

---

*Together with No. 251, *New York* v. *United States,* also on writ of certiorari, 314 U. S. 592, to the Circuit Court of Appeals for the Second Circuit.

*Mr. J. Louis Monarch,* with whom *Solicitor General Fahy, Assistant Attorney General Clark,* and *Mr. Alvin J. Rockwell* were on the brief, for the United States.

*Mr. William Gerard Ryan,* Assistant Attorney General of the State of New York, with whom *Messrs. John J. Bennett, Jr.,* Attorney General, and *Henry Epstein,* Solicitor General, were on the brief, for the State of New York.

MR. JUSTICE BYRNES delivered the opinion of the Court.

The United States and the State of New York seek review of a judgment of the Circuit Court of Appeals for the Second Circuit reversing in part a District Court order for the distribution of the assets of a bankrupt estate. The Independent Automobile Forwarding Corporation was adjudicated a bankrupt on April 26, 1938. A total of $3,053.20 eventually became available for distribution.

This amount was insufficient even to meet those claims of the federal and state governments which were assertedly entitled to priority as taxes under § 64 (a) (4) of the Bankruptcy Act.[1] The federal claims of this character were for amounts due under §§ 801 and 802 of Title VIII and under § 901 of Title IX of the Social Security Act,[2] and for certain taxes as to which no question is raised in this case. The state claims were for payments due its unemployment insurance fund, and for taxes not in issue here.

The state's appeal from the District Court's first order of distribution was discontinued by agreement of the

---

[1] "Section 64. Debts which have priority.—a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be . . . (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof . . ." U. S. C., Title 11, § 104.

[2] c. 531, 49 Stat. 636, 639.

"Section 801. Income tax on employees. In addition to other taxes, there shall be levied, collected, and paid upon the income of every individual a tax equal to the following percentages of the wages (as defined in § 811) received by him after December 31, 1936, with respect to unemployment (as defined in § 811) after such date: (1) With respect to employment during the calendar years 1937, 1938, and 1939, the rate shall be 1 per centum." U. S. C., Title 42, § 1001.

"Section 802. (a) The tax imposed by § 801 shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid. Every employer required so to deduct the tax is hereby made liable for the payment of such tax, and is hereby indemnified against the claims and demands of any person for the amount of any such payment made by such employer." U. S. C., Title 42, § 1002.

"Sec. 901. On and after January 1, 1936, every employer (as defined in § 907) shall pay for each calendar year an excise tax, with respect to having individuals in his employ, equal to the following percentages of the total wages (as defined in § 907) payable by him (regardless of the time of payment) with respect to employment (as defined in § 907) during such calendar year: . . . (2) with respect to employment during the calendar year 1937 the rate shall be 2 per centum. . . ." U. S. C., Title 42, § 1101.

parties because the Social Security Act had been extensively amended while the appeal was pending.[3]   A second order was thereupon entered by the District Court.   The State again appealed to the Circuit Court of Appeals.   It contended that the share of the assets granted to the federal government was excessive for three reasons:  (1) the claim based on § 801 of Title VIII of the Social Security Act was a claim for a debt rather than for taxes and thus was not entitled to priority under § 64 (a) (4) of the Bankruptcy Act; (2) no more than 10% of the claim based on § 901 of Title IX of the Social Security Act was entitled to allowance because the balance constituted a claim for a penalty rather than a tax and thus fell within the prohibition of § 57 (j) of the Bankruptcy Act;[4] and (3) the credit against the Title IX claim provided for in § 902 was incorrectly calculated.   The Circuit Court of Appeals sustained the state's contention with respect to the Title VIII claim and reversed to that extent the order of the District Court, but rejected the state's arguments with respect to the claim under Title IX.

*First.   The claim based on Title VIII.*   Section 801 bears the heading "Income tax on employees" and provides for a tax "upon the income of every individual" equal to 1 per centum of the wages received by him with respect to employment during 1937.[5]   Section 802 (a) provides that this tax "shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid."   The employer is made

---

[3] c. 666, 53 Stat. 1360, 1399.   See notes 9 and 10, *infra.*

[4] "Section 57 (j).   Debts owing to the United States or any State or subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued thereon according to law."   U. S. C., Title 11, § 93 (j).

[5] Both the pertinent state and federal claims are for the year 1937.

liable for the payment of the tax. By regulation, pursuant to Title VIII,[6] the Treasury Department has explicitly ruled that the tax may be assessed against the employer, regardless of whether he has in fact deducted it from the employee's wages. The Circuit Court of Appeals held that the employer was liable "only as an agent bound to pay whether its duty to collect was performed or not" and that his liability was for a debt rather than for taxes. 118 F. 2d 537.

As authority for this view, it relied upon its decision of the same date in *City of New York* v. *Feiring*, 118 F. 2d 329. The city sales tax involved in that case was laid upon receipts from sales of personal property. The vendor was required to collect the amount of the tax from the vendee separately from the sales price. He was obliged to report periodically concerning his receipts from sales and to turn over to the City Comptroller the taxes due, whether or not he had actually collected them from the purchasers. If the vendor failed to collect the tax, the vendee was required to report the transaction and to pay the tax directly. Thus, the procedure contemplated was that the purchaser should bear the burden of the tax, but that the seller should collect and transmit it to the Comptroller. If the seller did not obtain it from the purchaser, however, the Comptroller was authorized to proceed to collect it from either of them. The Circuit Court of Appeals held that the claim of the City against a bankrupt vendor for the amount of the sales tax outstanding was a claim for a debt and not for taxes, within the meaning of § 64 (a) (4). We reversed this decision and held that the burden imposed upon the seller by the city taxing act had "all the characteristics of a tax entitled to priority" under § 64 (a) (4). 313 U. S. 283.

---

[6] Treasury Regulations 91, Article 505.

We think that our decision in the *Feiring* case is controlling here. The New York City sales tax involved in that case and the obligation imposed by §§ 801 and 802 of Title VIII of the Social Security Act cannot be distinguished in any material respect. It was observed in the *Feiring* case that, while the sales tax was intended to rest upon the purchaser "in its normal operation," "both the vendor and the vendee are made liable for payment of the tax *in invitum* . . . and the tax may be summarily collected by distraint of the property of either the seller or the buyer." 313 U. S. 283, at 287. The burden of the tax provided for by §§ 801 and 802 likewise will normally rest upon the employee, but the Commissioner of Internal Revenue may proceed to collect it from the employer whether or not he has deducted it from the wages of the employee.

Two distinctions between the cases are urged by the State. One is that § 802 (a) of Title VIII provides that the tax "shall be collected by the employer of the taxpayer" and thus reveals a Congressional intent that only a claim against the employee should be treated as one for a tax. The other asserted distinction is that Title VIII in its entirety is designed to impose two distinct taxes; § 801 imposes an "income tax" upon the employee, while § 804 imposes an "excise tax" upon the employer.[7] But a tax for purposes of § 64 (a) (4) includes any "pecuniary burden laid upon individuals or property for the purpose of supporting the Government," by whatever name it may

---

[7] "Section 804. Excise tax on employers. In addition to other taxes, every employer shall pay an excise tax, with respect to having individuals in his employ, equal to the following percentages of the wages (as defined in § 811) paid by him after December 31, 1936, with respect to employment (as defined in § 811) after such date: (1) With respect to employment during the calendar years 1937, 1938, and 1939, the rate shall be 1 per centum." U. S. C., Title 42, § 1004.

be called. *New Jersey* v. *Anderson,* 203 U. S. 483, 492. Although he may not be referred to in §§ 801 and 802 as the taxpayer, and although he may also be subject to the "excise tax" prescribed by § 804, the plain fact is that the employer is liable for the § 801 tax whether or not be has collected it from his employees. We therefore hold that the Title VIII claim of the United States against the estate of this bankrupt employer is entitled to the priority afforded by § 64 (a) (4).

*Second. The claim under Title IX.* Section 901 imposes upon this employer, in addition to the obligations discussed above, an "excise tax" equal to 2 per centum of the total wages payable by him during 1937. Section 902, however, permits him to credit "against the tax imposed by § 901" the amount of his 1937 contributions to the state unemployment fund, but provides that the total credit "shall not exceed 90 per centum of the tax against which it is credited."

(a) The State contends that § 902 (a) in effect exacts a penalty, equal to 90% of the amount of the tax levied by § 901, from an employer who fails to make the payments to the state unemployment fund required by state law. Since § 57 (j) of the Bankruptcy Act provides that claims by the United States for penalties are not allowable,[8] it argues, only 10% of the tax imposed by § 901 is actually a tax for purposes of § 64 (a) (4) of the Bankruptcy Act. There is no merit to this contention. While the issue here is cast in somewhat different terms, it is similar in outline to that raised by the constitutional objection to the Act which was set to rest in *Steward Machine Co.* v. *Davis,* 301 U. S. 548. There it was argued that the 90% credit provisions amounted to coercion of the States which was repugnant to the Tenth Amendment and to the federal system. The Court recognized that the effect of the scheme was to encourage the States to

---

[8] See note 4, *supra.*

establish and maintain unemployment insurance funds and thus to coöperate with the federal government in meeting a common problem. It observed that "every rebate from a tax when conditioned upon conduct is in some measure a temptation" but it concluded that "to hold that motive or temptation is equivalent to coercion is to plunge the law in endless difficulties," and to accept "a philosophical determinism by which choice becomes impossible." 301 U. S. at 589–590. These considerations are equally pertinent to the suggestion that the 90% rebate arrangement constitutes the imposition of a "penalty" within the meaning of § 57 (j) upon an employer who fails or refuses to contribute to a state fund. The amount of the tax assessable under § 901 is definite and fixed, once the single variable, the total of the wages paid during the year, is determined. Although the employer is free to obtain a credit against it by contributing to his state fund, it cannot be said that it is any the less a tax because the employer has failed, either through choice or lack of resources, to make such a contribution. Either the state or the federal government must provide the money to meet the requirements of relief to the unemployed. By his contributions to the State, an employer has diminished the demand upon the financial resources of the federal government. But by his failure to contribute, the employer has increased this demand and sharpened the necessity for obtaining the revenues required to satisfy it. The effort by the United States to obtain the revenue by denying the credit must be regarded as the levying of a tax and not as the exaction of a penalty.[9]

---

[9] In 1939 Congress undertook to put an end to any doubts on this question by providing in § 902 (i) of the amendments to the Social Security Act that no part of the tax imposed by Title IX should be deemed a penalty or forfeiture within the meaning of § 57 (j) of the Bankruptcy Act. C. 666, 53 Stat. 1360, 1400.

(b) Finally the State contends that the District Court applied an incorrect formula in determining the amount of the credit deductible under § 902. Section 902 provides: "The taxpayer may credit against the tax imposed by § 901 of this chapter the amount of contributions, with respect to employment during the taxable year, paid by him (before the date of filing his return for the taxable year) [10] into an unemployment fund under a state law. The total credit allowed to a taxpayer under this section for all contributions paid into unemployment funds with respect to employment during such taxable year shall not exceed 90 per centum of the tax against which it is credited . . ." In the case of a bankrupt who has not made any contribution to the state unemployment fund at the time of adjudication and whose assets are insufficient to meet the total of the claims of equal priority, the calculation of the credit is beset with some difficulty. The amount available for the state's claim for its unemployment insurance fund is contingent upon the sums allowed on the other claims, including that of the federal government under § 901. The amount to be allowed on the claim of the United States is in turn dependent upon the credit deductible from it under the terms of § 902. And this credit under § 902 is determined by the sum granted on the state's unemployment insurance fund claim.

Because of this mutual dependence, the courts below have accepted and approved an algebraic solution of the

---

[10] This condition had not been complied with in the present case. However, the 1939 amendments to the Social Security Act, which resulted in the dismissal of the first appeal by stipulation, provided that the credit should be allowed on payments to the state fund "without regard to the date of payment, if the assets of the taxpayer are, at any time during the fifty-nine-day period following such date of enactment, in the custody or control of a receiver, trustee, or other fiduciary appointed by, or under the control of, a court of competent jurisdiction." § 901 (a) (3). C. 666, 53 Stat. 1360, 1399. This bankrupt estate qualified under this provision.

problem. Under this solution, the claim for the tax assessed under § 901 is diminished by subtracting from it an amount equal to the sum allowed to the State for its unemployment fund. The formula by which this is accomplished is reducible to a quadratic equation capable of solution by the recognized method.

As against this algebraic solution, the State urges an arithmetical calculation which would afford it a larger share of the assets. In brief, the state's theory is as follows: The amount of each of the several claims of the State and of the United States should be divided by the total of such claims. The percentage of the assets due on each claim is thus determined. The total of the assets available is then multiplied in turn by these percentages, and the actual sum to be allowed on each claim is found. However, the amount allowed on the federal government's claim under § 901 is then multiplied by 10%. The sum equal to this 10% is thereupon conclusively granted to the United States. But the remaining amount, equal to 90%, is returned to the estate as a second fund to be divided among all the claims in the same manner. The share of this second fund which by this computation would go to the United States on its § 901 claim is again multiplied by 10%, with the balance of 90% returning to form a third fund. The process is repeated until the still undistributed assets reach a vanishing point.

It will be observed that while the one solution is algebraic and the other arithmetic, there is little to choose between them in terms of complexity. The obvious fact is that neither the Bankruptcy Act nor the Social Security Act affords the courts any meaningful assistance in solving the problem raised by this case. And their legislative history is equally barren.

The State objects to the formula applied below because its effect is to accord the United States a larger sum in dollars and cents on its § 901 claim than it would

receive if the available assets were sufficient to discharge in full all of the priority claims. This is true because, under § 902, the United States would be entitled to no more than 10% of its § 901 claim if the unemployment fund claim of the State was paid in full. We agree that this result is somewhat incongruous. However, the method of computation urged by the State embodies so basic an error that we cannot accept it. Section 902 permits the credit "against the tax imposed by § 901." Under the state's formula the credit is reckoned in terms of a sum determined by that formula to be *actually available* to the United States on its § 901 claim rather than in terms of the whole amount *actually due* under that section. We think that the words "the tax imposed" must mean "the tax demanded" or "assessed" or "due." It can hardly be thought to mean "the tax paid" or "the amount available for payment of the tax." The formula adopted by the District Court avoids this error by crediting the undetermined sum available to the state unemployment fund against the total tax assessed or claimed under § 901. We therefore hold that the District Court and the Circuit Court of Appeals did not err in adopting and using that formula.

The judgment of the Circuit Court of Appeals is reversed with respect to the claim under Title VIII, but is otherwise affirmed. The case is remanded to permit the reinstatement of the judgment of the District Court.

*Reversed.*