Benjamin B. BROWN, Trustee in Bank-
ruptcy for Amco Millwork & Lum-
ber Co., Inc., Appellant,

v.

COLLECTOR OF TAXES FOR the DIS-
TRICT OF COLUMBIA, Appellee.

No. 13514.

United States Court of Appeals
District of Columbia Circuit.

Argued March 26, 1957.

Decided June 20, 1957.

Petition for Rehearing Denied
Sept. 16, 1957.

Mr. Edward L. Genn, Washington, D.
C., with whom Mr. Nathan M. Brown,
Washington, D. C., was on the brief, for
appellant.

Mr. Leo J. Ehrig, Jr., Asst. Corpora-
tion Counsel for the District of Columbia,
with whom Messrs. Chester H. Gray,
Corporation Counsel, Milton D. Korman,
Principal Asst. Corporation Counsel, and
Henry E. Wixon, Asst. Corporation Coun-
sel, were on the brief, for appellee. Mr.
Vernon E. West, Corporation Counsel at

the time record was filed, also entered an appearance for appellee.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

## DANAHER, Circuit Judge.

Appellant, as Trustee in Bankruptcy of Amco Millwork & Lumber Co., Inc., attacks an order of the District Court allowing the Collector's claim for personal property taxes assessed for the fiscal year 1955.

The corporation was adjudicated a bankrupt June 23, 1954. On July 22, 1954, the Collector of Taxes for the District of Columbia filed a proof of claim for the 1953 franchise tax, for the personal property tax for the fiscal year 1953–1954, and the February, March, April, May and June 1954 sales taxes, all of which, including penalties and interest, totaled $1,797.22.[1] After the Trustee had been appointed on July 27, 1954, the Assessor called upon him to file a personal property tax return for the fiscal year, July 1, 1954–June 30, 1955, but the Trustee declined to do so.

The fiscal year of the District of Columbia commences on the first day of July, annually.[2] The personal property tax each fiscal year is levied at a rate ascertained and fixed by the Commissioners.[3] When no return of personal property was made in the month of July as required,[4] the Board of Personal-Tax Appraisers was authorized "from the best information they can procure" to make an assessment.[5] The Assessor here filed a "supplementary" proof of claim, attached to which was a tax bill charged to the Trustee and reciting a valuation[6] on the personal property of $52,130. Based on that valuation, and at the rate of 2%, the District's tax claim for the fiscal year 1955 was asserted to be $1,042.60. The Trustee filed objections on the ground that the claim was "unsubstantiated and * * * unwarranted since the bankruptcy petition was filed on June 22, 1954, which was in advance of the July 1st date as required under the statute." After a hearing, the Referee filed his memorandum,[7] including findings of fact and conclusions of law, and thereupon entered an order disallowing the District's personal property tax claim for the fiscal year 1955.

The District thereafter filed its petition for review[8] asserting:

"The Referee in Bankruptcy erred in disallowing and expunging the supplemental claim of the Collector of Taxes of the District of Columbia against Amco Millwork and Lumber Company, Inc. for personal property taxes for the fiscal year July 1, 1954 to June 30, 1955."

The District Judge overruled the Referee's order of disallowance and ordered that the District's claim be "reinstated and allowed in the amount of $1,042.60 and granted priority in accordance with the provisions of Section 64(a) of the Bankruptcy Act [11 U.S.C.A. § 104, sub. a]."

The Appellant claims that as a liquidating trustee he incurs no liability for the personal property taxes "where the date of assessment is subsequent to the date of adjudication in bankruptcy

1. The Collector later having eliminated certain interest and penalty charges, this claim, so reduced, seems to have been allowed. Although we do not have the order before us, no issue has been raised with respect to the amended item.

2. D.C. Code § 47–101 (1951).

3. D.C. Code § 47–501 (1951).

4. D.C. Code § 47–1206 (Supp. V, 1951 ed.)

5. D.C. Code § 47–1203 (Supp. V, 1951 ed.)

6. The assessment for the previous fiscal year, as disclosed by the original proof of

claim, was based upon personal property valued at $40,304. After the Trustee was appointed herein, an official appraisal was made and filed as of August 13, 1954, showing the personal property owned by the bankrupt to have a value of $21,427.71. On August 18, 1954, the property so appraised was sold at public auction for $20,604.33.

7. We refer freely to the Referee's memorandum, filed in accordance with General Order 47, 11 U.S.C.A. following § 53.

8. 11 U.S.C.A. § 67, sub. c.

and where the trustee in bankruptcy does not conduct any business."[9] Title to all of the property of the bankrupt not declared to be exempt is, of course, vested in the Trustee as of the date of the filing of the petition.[10] "By the transfer to the trustee no mysterious or peculiar ownership or qualities are given to the property. It is dedicated, it is true, to the payment of the creditors of the bankrupt, but there is nothing in that to withdraw it from the necessity of protection by the state and municipality or which should exempt it from its obligations to either."[11] We hold that the personal property in the hands of the Trustee on July 1, 1954, became, and is, subject to the District's personal property tax for the fiscal year commencing on that date.[12]

Here, for the first time, the Trustee also urges that if liability be found, the basis of assessment was improper in that the Assessor predicated his claim upon the value of the inventory during the year prior to bankruptcy when the bankrupt was a going concern. The District insists we may not consider that question on the ground that no findings were made with respect to the basis for the tax since the Referee failed to reach that question. He had concluded only that there was no liability. The District Court upon review simply reversed, since the petition for review had raised only the question of liability, *vel non*. We may properly conclude that the assess-

ment had been established as the Referee found, particularly since the Referee, applying the current tax rate of 2% to the assessment of $52,130, ascertained the product to be $1,042.60, the amount of the claim, based on the "average stock in trade for the preceding year."

The Referee's finding tells us all we need to know to establish the *basis* in terms of dollar amount. If that valuation, so arrived at, is exactly equal to the full and true value in lawful money, we are met with a strange coincidence, to say the least. "All personal property in the District of Columbia subject to taxation shall be listed and assessed at not less than the full and true value thereof in lawful money."[13] That is the standard of the law, the full and true value in lawful money as of July 1 in each fiscal year. When no return has been filed, the Board of Personal-Tax Appraisers may make their assessment "from the best information they can procure," and similarly, if a return has been filed and that Board is not satisfied as to the correctness of the return, the Board may reject the return and in like manner arrive at a just assessment. The "true value" standard is the same in either event.

██ It is true that Congress has provided that established dealers in active business are not to be bound, each year, to take inventory, to evaluate and to make return concerning complete stocks in trade.[14] As to such going businesses,

---

9. The Trustee mistakenly relies upon 28 U.S.C. § 960. That section specifies that officers conducting any business under authority of the United States court shall be subject to taxes "applicable to such business to the same extent as if it were conducted by an individual or corporation." The affirmation of tax liability there spelled out does not exclude liability for taxes otherwise validly imposed. There can be no question that the District's claim for personal property tax is a tax for all purposes hereinafter discussed. State of New Jersey v. Anderson, 1906, 203 U.S. 483, 492, 27 S.Ct. 137, 51 L.Ed. 284; City of New York v. Feiring, 1941, 313 U.S. 283, 285, 61 S.Ct. 1028, 85 L.Ed. 1333; United States v. State of New York, 1942, 315 U.S. 510, 316 U.S. 643, 62 S.Ct. 712, 86 L.Ed. 998.

10. 30 Stat. 565 (1898), as amended, 11 U.S.C.A. § 110.

11. Swarts v. Hammer, 1904, 194 U.S. 441, 444, 24 S.Ct. 695, 696, 48 L.Ed. 1060.

12. Swarts v. Hammer, supra note 11; 3 Collier on Bankruptcy ¶ 62.14, at 1514 (14th ed. 1956) and cases cited in n. 53; cf. Berryhill v. Gerstel, 5 Cir., 1952, 196 F.2d 304.

13. D.C. Code § 47–1202 (1951) ; and see District of Columbia v. Morris, 1946, 81 U.S.App.D.C. 356, 159 F.2d 13.

14. D.C. Code § 47–1212 (Supp. V, 1951 ed.) provides: "Dealers in general merchandise of every description shall pay to the collector of taxes of the District of Columbia one and one-half per centum on the

the Code in this particular provides, simply as a matter of convenience and in lieu of the return required of all other owners of personal property,[15] a workable measure of personal property valuation. The Assessor is even authorized to re-assess any stock so returned by the owner of a going business whenever in the judgment of the Assessor it has been undervalued by the adoption of this measuring[16] device. But the "measure" permitted to a going business as a matter of convenience is no substitute for the true value standard which must here control.

■ Accordingly, if as the Referee found, the assessment was based upon the average stock in trade in the year prior to July 1, 1954, the valuation so arrived at was incorrect unless the amount in dollars also represented the full and true value in lawful money. The Trustee here, on July 1, 1954, was the owner of the property by operation of law. We have previously pointed out that the personal property tax is a definite charge against the owner of the property.[17] We are not here concerned with problems of priority as to taxes owing "by the bankrupt"[18] for preceding years, but we are concerned that the District Court shall not order payment of a tax against any property of the bankrupt in excess of the value of the interest of the estate "as determined by the court."[19]

We hold, therefore:

(1) that the District of Columbia is entitled to the personal property tax for the fiscal year 1955 based upon the July 1, 1954, true value standard above discussed; and

(2) that the assessment must reflect that true value.[20] The case is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

## On Petition for Rehearing

### PER CURIAM:

■ The Trustee's petition for rehearing is denied. We are satisfied that Congress undertook to reach all nonexempt "tangible personal property and all general merchandise or stock in trade, owned or held in trust *or otherwise*," D.C.Code, § 47–1203 (Supp. V 1951)

---

average stock in trade for the preceding year."

15. D.C. Code § 47–1203 (Supp. V, 1951 ed.).

16. A not dissimilar "measure" was to be found in the provisions for the tax on the privilege of doing business as we said in Neild v. District of Columbia, 1940, 71 App.D.C. 306, 313, 110 F.2d 246, 253. There we pointed out that while the Act imposed "a tax upon the privilege of engaging in business in the District during the fiscal year 1937–1938, it makes the measure of the tax the gross receipts of the taxpayer from his business during the calendar year 1936." Cf. Act of May 16, 1938, Title VI, 52 Stat. 363, which expired June 30, 1939, D.C. Code 1951, § 47–1701 note.

17. Tumulty v. District of Columbia, 1939, 69 App.D.C. 390, 395, 102 F.2d 254, 259.

18. 11 U.S.C.A. § 104, sub. a (4); indeed taxes for prior years seem to have been allowed. Supra note 1.

19. Id.; and see the proviso, "That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court." Cf. Arkansas Corp. Comm. v. Thompson, 1941, 313 U.S. 132, 143, 61 S.Ct. 888, 85 L.Ed. 1244, where valuation was established by a quasi-judicial agency of the state as distinguished from the instant situation and that in New Jersey v. Anderson, supra note 9.

20. Certainly the August, 1954, official appraisal and sale at public auction are not without significance irrespective of the value of the average stock in trade for the preceding year. It is a matter of common, practical experience that a hard-pressed concern may largely liquidate its inventory in a short period of time in an effort to fend off urgent claims. It may also not pass unnoticed that the stock, found by the Assessor to have possessed a value of some $52,000 in the year preceding bankruptcy, based upon the "average stock in trade" theory, brought only some $20,000 seven weeks after the adjudication. See Henderson County, N. C. v. Wilkins, 4 Cir., 1930, 43 F.2d 670.

(Emphasis added), and that a trustee in bankruptcy is such a "person" as is bound to make and deliver the required schedule or return of such property. Compare D.C.Code, § 47–1411 (1951) defining "person" and "return."