**In re James Emby KING aka Jack E. King aka Jack and David King' and Sons Excavating Company aka David King and Sons Excavating Company, Debtor.**

**UNITED STATES of America, Plaintiff,**

v.

**James Emby KING, Defendant.**

**In re David Fleenor KING aka David F. King & Sons Excavating Company aka Jack & David King & Sons Excavating Company aka King Brothers Wood Products, Inc., Debtor.**

**UNITED STATES of America, Plaintiff,**

v.

**David Fleenor KING, Defendant.**

Bankruptcy Nos. 3–80–00429, 3–80–00428. Adv. Nos. 3–81–0796, 3–81–0784.

United States Bankruptcy Court, E. D. Tennessee.

May 5, 1982.

W. Thomas Dillard, Richard K. Harris, Knoxville, Tenn., and Robert S. More, Barbourville, Ky., for plaintiff.

Richard Stair, Jr., Knoxville, Tenn., for defendants.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue in these adversary proceedings is whether mine reclamation fees due and owing pursuant to the Surface Mining Control and Reclamation Act of 1977[1] are taxes excepted from discharge. 11 U.S.C. § 523(a)(1)(A).

### I

David Fleenor King filed a Chapter 7 petition in bankruptcy on April 10, 1980, and his brother, James Emby King, filed a similar petition on April 10, 1980. On September 16, 1981, the United States filed complaints seeking a determination of the dischargeability of the debts owed by the defendants for abandoned mine reclamation fees assessed pursuant to § 402(a) of the Surface Mining Control and Reclamation Act of 1977 (the Act), 30 U.S.C. § 1232(a).[2]

---

1. 30 U.S.C. § 1201 et seq.

2. "(a) All operators of coal mining operations subject to the provisions of this chapter shall pay to the Secretary of the Interior, for deposit in the fund, a reclamation fee of 35 cents per ton of coal produced by surface coal mining and 15 cents per ton of coal produced by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less, except that the reclamation fee for lignite coal shall be at a rate of 2 per centum of the value of the coal at the mine, or 10 cents per ton, whichever is less." 30 U.S.C. § 1232(a).

The plaintiff alleges that the defendants produced a total of 47,796.23 tons of coal during 1978, 1979 and the first quarter of 1980 but the defendants failed to pay the reclamation fee on the production within thirty days after the end of each quarter.[3] Therefore, the plaintiff argues the defendants owe a total of $16,728.69 in delinquent fees with interest at the rate of 1% per month commencing thirty (30) days after the end of each calendar quarter for which fees were due. 30 C.F.R. § 870.15(d).

The defendants have not filed answers in these adversary proceedings, but on November 16, 1981, filed motions for summary judgment asserting that there are no genuine issues of material fact for the court to determine. The plaintiff subsequently filed a motion for summary judgment against the defendants.

## II

The Surface Mining Act is a comprehensive statute intended to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a). In § 401 of the Act, 30 U.S.C. § 1231(a), Congress established a trust fund to be known as the "Abandoned Mine Reclamation Fund" to be administered by the Secretary of the Interior. Monies in this fund were to be used for the "reclamation and restoration of land and water resources adversely affected by past coal mining." 30 U.S.C. § 1231(c).

Section 402(a) of the Act, 30 U.S.C. § 1232(a), provides that

"All operators of coal mining operations subject to the provisions of this chapter shall pay to the Secretary of the Interior, for deposit in the fund, a reclamation *fee* of 35 cents per ton of coal produced by surface coal mining and 15 cents per ton of coal produced by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less...." (Emphasis added.)

Operators are required to submit quarterly statements of the amount of coal produced and to pay the required fee within 30 days after the end of each quarter. 30 U.S.C. § 1232(b), (c). Criminal penalties are provided for knowingly falsifying or failing to submit the required statement, 30 U.S.C. § 1232(d); and civil actions may be brought to recover any unpaid fees. 30 U.S.C. § 1232(e).

## III

Sec. 523(a)(1)(A) of the Bankruptcy Code excepts from discharge any debt for a "tax" of a kind and for the periods specified in § 507(a)(6).[4] Since the Surface Mining Act does not specifically refer to the abandoned mine reclamation fee as a "tax," the de-

---

3. Sec. 1232 also provides that
"Due date
(b) Such fee shall be paid no later than thirty days after the end of each calendar quarter beginning with the first calendar quarter occurring after August 3, 1977, and ending fifteen years after August 3, 1977, unless extended by an Act of Congress." 30 U.S.C. § 1232(b).

4. "The following expenses and claims have priority in the following order:

(6) Sixth, allowed unsecured claims of governmental units, to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts—

(B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition;

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;
(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;
(E) an excise tax on—
(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition; ...." 11 U.S.C. § 507(a)(6).

fendants argue that the reclamation fee is not a tax; therefore, the "fees" owed by the defendants are dischargeable.

The United States contends that the use of the word "fee" in 30 U.S.C. § 1232(a) should not be used to conclusively determine that the payments the defendants were required to make pursuant to that statute do not constitute "taxes" for the purpose of 11 U.S.C. § 507(a)(6), 523(a)(1)(A).

The distinction between taxes and fees has been stated as follows:

"Taxation is a legislative function, and Congress, which is the sole organ for levying taxes, may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income. A fee, however, is incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of the society...." *National Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 342, 94 S.Ct. 1146, 1149, 39 L.Ed.2d 370 (1974).

*In re Pan American Paper Mills, Inc.*, 618 F.2d 159 (1st Cir. 1980), presented the issue of whether unpaid "premiums" assessed under the Puerto Rico Workmen's Accident Compensation Act constituted "taxes" entitled to priority pursuant to § 64(a)(4) of the Bankruptcy Act.[5] The Workmen's Accident Compensation Act established a state insurance fund. Every covered employer was required to file a yearly report containing a statement of wages paid during the year. The manager of the Insurance Fund would then assess the "premiums" due for the following year. If premiums were not paid, the manager could assess, levy, and collect all premiums due. Over a four year period before Pan American filed a bankruptcy petition under Chapter XI, Pan American failed to pay premiums in the total amount of $68,250.61. The Fund filed a priority claim for this amount under § 64(a)(4).

The Court of Appeals followed the holding of the U. S. Supreme Court in *United States v. New York*, 315 U.S. 510, 62 S.Ct. 712, 86 L.Ed. 998 (1942), stating that

"The Supreme Court, taking a broad view of what constitutes 'taxes' within the meaning of § 64(a)(4), has ruled that 'the priority commanded by § 64 extends to those pecuniary obligations laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it.'" *In re Pan American Paper Mills, Inc.*, supra at 162.

Accordingly, the court found the "premiums" to have "tax" characteristics and held that the premiums should be treated as taxes within § 64(a)(4) because "they are pecuniary obligations imposed by the government for the purpose of defraying the expenses of an undertaking which it authorized." *Id.* at 162. *See City of New York v. Feiring*, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941).

The Surface Mining Act is similar to the Puerto Rico Workmen's Accident Compensation Act involved in *Pan American*. Coal operators are required to submit a quarterly statement showing the amount of coal produced. A reclamation fee is then paid to the Secretary of the Interior based upon the amount of coal mined. Civil actions may be brought to collect unpaid fees. In order to "protect society and the environment from the adverse effects of surface coal mining operations" Congress placed a pecuniary obligation upon individuals or their property, regardless of their consent, for the purpose of defraying an undertaking authorized by the government. *In re Pan American Pa-*

---

**5.** "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be ... (4) taxes which became legally due and owing by the bankrupt to the United States or to any state or any subdivision thereof which are not released by a discharge in bankruptcy...." 11 U.S.C. § 104(a)(4) (Repealed 1979).

*per Mills*, supra. The mining reclamation fee therefore constitutes a tax within the meaning of § 507(a)(6) under the definition established by the U. S. Supreme Court. *New Jersey v. Anderson*, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906); *City of New York v. Feiring*, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941); *United States v. New York*, 315 U.S. 510, 62 S.Ct. 712, 86 L.Ed. 998 (1942). The fact that the funds due the United States are designated as "fees" in the statute is not determinative.

> "But a tax for purposes of § 64, sub. a(4) includes any 'pecuniary burden laid upon individuals or property for the purpose of supporting the government' by whatever name it may be called." *United States v. New York*, supra.

As stated in *In re Beaman*, 9 B.R. 539, 540 (Bkrtcy.D.Or.1980),

> "While the characterization by the enacting authority of an obligation as a tax is important, the determination of dischargeability is a federal question and must be based upon whether the debt actually possesses the characteristics of a tax."

### IV

The United States agrees with the defendants that the reclamation fee is not a tax on or measured by income or gross receipts, a property tax, a tax required to be collected or withheld, an employment tax or a customs duty. 11 U.S.C. § 507(a)(6)(A)–(D). However, the United States does contend that the fee is an excise tax. 11 U.S.C. § 507(a)(6)(D).

"Excise tax" has been given a very broad definition by the United States Supreme Court. The plaintiff in *Bromley v. McCaughn*, 280 U.S. 124, 50 S.Ct. 46, 74 L.Ed. 226 (1929), challenged the constitutionality of a gift tax enacted by the Revenue Act of 1924 as amended, asserting that the tax violated sections two (2) and nine (9) of Article 1 of the Constitution in that it imposed a direct tax which had not been apportioned. In distinguishing a direct tax from an excise tax the court stated that

> "this court has consistently held, almost from the foundation of the government, that a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership, is an excise [tax]...." *Id.* at 136, 50 S.Ct. 47.

Following this definition the gift tax was found to be an excise tax in that it was a tax on one of the powers incident to the ownership of property, i.e., the power to give the property to another.

*In re Beaman*, 9 B.R. 539 (Bkrtcy.D.Or. 1980), the court recognized that the U. S. Supreme Court had broadly defined the term "excise tax." *Beaman* concerned the dischargeability of obligations to reimburse the State of Oregon for payments made through the State Industrial Accident Fund to employees of the debtor for injuries which were not insured as required by law. The plaintiff contended the obligations represented excise taxes and thus were nondischargeable. The court stated that "an excise tax may be any tax that is not a direct tax." Citing *Steward v. Davis*, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1936). In *Beaman* the tax in question was held to be an excise tax since it was not a direct tax imposed upon persons or property. Rather, it was a narrow, indirect tax imposed on noncomplying employers on whose behalf the state has paid a workman's compensation claim.

In the present case the reclamation fee—excise tax—is imposed upon a particular use of property or the exercise of a single power over the property incidental to ownership, i.e., the removal of coal from the land. The fee may reasonably be regarded as a tax for the privilege of mining coal. Thus, the fee is an "excise" tax for the purposes of § 507(a)(6) and therefore is excepted from discharge by § 523(a)(1). The motions for summary judgment filed by the United States will be granted.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

Plaintiff will submit Judgments within 5 days.