In re Lucius Fredric CASSIDY, Jr., also known as Lucius F. Cassidy, also known as Pete Cassidy, Debtor.

UNITED STATES of America, on Behalf of its Agency, the INTERNAL REVENUE SERVICE (IRS); Lucius F. Cassidy, Jr., Appellants,

v.

D. Scott DUMLER, Appellee.

Nos. 91–1180, 91–1244.

United States Court of Appeals, Tenth Circuit.

Dec. 7, 1992.

Kenneth W. Rosenberg, Atty., Tax Div., Dept. of Justice, Washington, DC (Shirley D. Peterson, Asst. Atty. Gen., James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen and Gary D. Gray, Attys., Tax Div., Dept. of Justice, Washington, DC, with him on the briefs, Michael J. Norton, U.S. Atty., Denver, CO, of counsel), for appellant U.S.

John B. Wasserman (Michael E. Katch and Dana M. Arvin, with him on the brief) of Katch, Wasserman & Jobin, Denver, CO, for appellant Lucius Fredric Cassidy, Jr.

Caroline C. Fuller (Gregory J. Anderson, with her on the brief) of Fairfield and Woods, P.C., Denver, CO, for appellee D. Scott Dumler.

Before McKAY, Chief Judge, SETH and BRORBY, Circuit Judges.

SETH, Circuit Judge.

This is an appeal from a judgment by the district court denying priority in bankruptcy to an exaction under Internal Revenue Code Section 72(t). The district court, affirming the bankruptcy court, concluded that the assessment was a "penalty for a nonpecuniary loss," and thus *not* entitled to priority under Section 507(a)(7) of the Bankruptcy Code.

Appellants Cassidy and the United States raise two issues on appeal: whether the IRS's assessment of a 10 percent exaction on the premature withdrawal of pension plan funds pursuant to 26 U.S.C. § 72(t) is a "tax" or a "penalty"; and if the exaction

is a penalty, whether it is for "a pecuniary or nonpecuniary loss."

Appellant Cassidy was liable as a general partner and guarantor for several partnership debts. He had pledged assets of two pension plans as security for those debts. The partnerships failed, and Appellant Cassidy filed Chapter 11 bankruptcy.

The United States filed a proof of claim asserting a priority status for $49,063.00 representing an assessment for early withdrawal from the pension plans pursuant to Section 72(t) of the Internal Revenue Code, 26 U.S.C. § 72(t). Appellee D. Scott Dumler, the disbursing agent under the Chapter 11 plan, filed an objection to the United States' claim, asserting that the assessment was a penalty not in compensation for actual pecuniary loss, and thus subordinate to the claims of the general unsecured creditors under the confirmed plan of reorganization. The bankruptcy judge agreed that the exactions were penalties for nonpecuniary loss, and disallowed the claim of priority. 126 B.R. 94. The district court affirmed.

The exaction at issue stems from the foreclosure on the pension plan assets which Appellant Cassidy had pledged as security. This constituted an early withdrawal of pension plan funds, triggering the 10 percent assessment under Internal Revenue Code Section 72(t). This section states:

> "(t) **10–percent additional tax on early distributions from qualified retirement plans.—**
>
> "(1) **Imposition of additional tax.—** If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income."

26 U.S.C. § 72(t).

The Bankruptcy Code provides priorities for certain claims against the bankruptcy estate. Section 507 of the Bankruptcy Code states:

> "(a) The following expenses and claims have priority in the following order:
>
> . . . .
>
> "(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
>
> "(A) a tax on or measured by income or gross receipts—"

11 U.S.C. § 507(a)(7).

Appellants argue that since Congress has labeled the exaction under Section 72(t) as a tax in the Internal Revenue Code and has granted taxes priority in the Bankruptcy Code, the courts have no power to look beyond those designations. Appellants urge us to adopt the reasoning of *United States v. Mansfield Tire & Rubber Co.*, 942 F.2d 1055 (6th Cir.1991), in which the Sixth Circuit deferred to Congress' designation of an exaction due under the Internal Revenue Code as a tax and declined to recharacterize it for purposes of priority in bankruptcy.

■ We cannot agree with Appellants that a court cannot recharacterize for purposes of bankruptcy what Congress has deemed a tax in the Internal Revenue Code. We must reject *Mansfield* and follow the reasoning of *Matter of Unified Control Systems, Inc.*, 586 F.2d 1036 (5th Cir.1978). The court in *Unified Control* held that a federal excise tax was a penalty, not a tax, for purposes of bankruptcy priority. In *Unified Control*, 586 F.2d at 1037–38, the court stated:

> "We cannot agree with the suggestion that the label placed upon an imposition in a revenue measure is decisive in determining its character. Like all other language in statutes, its meaning depends more upon its context than on its etymology.
>
> "We disagree, too, with the conclusion that a tax under the Constitution cannot be a penalty."

(Citations omitted.)

The Fifth Circuit in *Unified Control* went on to hold that the language of the act in question, the legislative history, graduated levels of sanctions, and the almost confiscatory level of the exactions

assessed convinced the court that the assessments were intended to curb the conduct via pecuniary punishment and thus were penalties. *Id.* at 1039.

Appellants contend that *Unified Control* was wrongly decided because it was based on Supreme Court cases involving recharacterization of state exactions, not federal exactions, *New Jersey v. Anderson*, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906), and *New York v. Feiring*, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941). This distinction, Appellants contend, makes *Anderson* and *Feiring* inapplicable to the instant case.

The labeling of an exaction as a tax by Congress is not determinative of its character for all purposes. In *Anderson*, the Supreme Court held that the name given to an exaction by the state legislature is not conclusive. In *Feiring*, the Supreme Court engaged in an analysis of whether a New York City sales tax was entitled to priority in bankruptcy. The Court looked at the terms and purposes of the Bankruptcy Act to establish the criteria upon which priority was to be allowed.

Although *Anderson* and *Feiring* involve recharacterizations of state exactions, the same analysis applies when a federal assessment is at issue. In *United States v. New York*, 315 U.S. 510, 62 S.Ct. 712, 86 L.Ed. 998 (1942), at issue was whether an exaction under Title VIII of the Social Security Act constituted a debt or a tax for purposes of priority in bankruptcy. The Court stated "[w]e think that our decision in the *Feiring* case is controlling here," despite the fact that *Feiring* involved a state exaction. In *New York*, 315 U.S. at 515, 62 S.Ct. at 715, the Court continued:

> "But a tax for purposes of § 64(a)(4) includes any 'pecuniary burden laid upon individuals or property for the purpose of supporting the Government,' by whatever name it may be called. *New Jersey v. Anderson*, 203 U.S. 483, 492 [27 S.Ct. 137, 140].... We therefore hold that the Title VIII claim of the United States against the estate of this bankrupt employer is entitled to the priority afforded by § 64(a)(4)."

The *New York* Court applied the reasoning of both *Feiring* and *Anderson* and did not limit them to cases only involving state exactions, and we do not read them as so limited either.

The Supreme Court has also recharacterized as a tax an assessment designated as a "penalty." In *United States v. Sotelo*, 436 U.S. 268, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978), the IRS filed a claim against the debtor's bankruptcy estate for "internal revenue taxes" that had been collected from a corporation's employees but not paid over to the government. The debtor objected to the claim on the grounds that the liability was described in the Internal Revenue Code as a "penalty" and thus was dischargeable. The Court stated that the "penalty" language was not dispositive of the status of the debt, *Id.* at 275, 98 S.Ct. at 1800, and stated that since the funds were unquestionably "taxes" at the time they were collected by the corporation from the employees, the designation as "penalties" when the government later sought to recover them did not change their essential character as taxes for the purpose of the Bankruptcy Act. *Id.*

 Having decided that Congress' labeling of the Section 72(t) exaction as a tax is not determinative of its status for priority in bankruptcy, we turn to the question of whether the exaction is indeed a tax or penalty. The test established in *Feiring* for determining if an assessment is a tax or a penalty has been described as a four-part test incorporating the following criteria: (1) an involuntary pecuniary burden, regardless of name, laid upon individuals or property; (2) imposed by, or under authority of the legislature; (3) for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; (4) under the police or taxing power of the state. *In re Lorber Industries of California, Inc.*, 675 F.2d 1062 (9th Cir.1982); *In re Skjonsby Truck Line, Inc.*, 39 B.R. 971 (Bankr.D.N.D.1984). It is undisputed that three of the four criteria are satisfied, therefore, our inquiry focuses on whether the third prong has been met. *See* S.Rep. No. 99–313, 99th

Cong., 2d Sess. (1986). The legislative history of the 72(t) exaction reveals multiple intentions of Congress.

■ The legislative history indicates that the basic purposes of the Section 72(t) exaction was to prevent retirement plans from being treated as savings accounts, to recapture a measure of tax benefits that have been provided prior to the withdrawal, and to deter the use of retirement funds for nonretirement purposes. The multiple intentions expressed in the legislative history do not enlighten us as to whether there is a single primary purpose. Appellants argue that since there is an indication of some public purpose (to recapture a measure of the tax benefits provided and to promote retirement savings), in conjunction with its designation as a tax, the plain meaning of the language, and the fact that it is self-assessing, the exaction is a tax under the *Feiring* test. However, there is an equally strong argument that the overall purpose is to deter withdrawals via sanctions, thus indicating that the exaction is a penalty. We agree with the district court that the *Feiring* test does not resolve the issue, and turn to bankruptcy policy.

Section 507(A)(7) of the Bankruptcy Code, granting priority to taxes, implements a broad congressional policy against punishing innocent creditors of a bankrupt. *Unified Control*, 586 F.2d at 1038. This policy has been summarized by the Supreme Court in *Simonson v. Granquist*, 369 U.S. 38, 40–41, 82 S.Ct. 537, 538–539, 7 L.Ed.2d 557 (1962):

> "For [§ 57(j)] plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a 'pecuniary' loss. So understood, this section, which has been a part of the Bankruptcy Act since its enactment in 1898, is in keeping with the broad aim of the Act to provide for the conservation of the estates of insolvents to the end that there may be as equitable a distribution of assets as is consistent with the type of claims involved. Moreover, the prohibition of all tax penalties in bankruptcy is wholly consistent with the policy of the penalty provisions themselves. Tax penalties are imposed at least in part as punitive measures against persons who have been guilty of some default or wrong. Enforcement of penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors."

The policy of protecting unsecured creditors from the bad conduct of the debtor is best implemented by avoiding burdening the claims of unsecured creditors with penalties that are imposed on the debtor. We agree with the district court that:

> "If the purpose of this additional tax is to deter the taxpayer from withdrawing amounts and everybody agrees that that's the purpose, then the deterrent effect will be diminished, at least, if not lost, by having the creditors rather than the taxpayer be the one to actually in the end pay for the early withdrawal.

> "If the additional amount is given priority over other creditors' claims, then that will subtract a large amount from the bankruptcy estate and it will discharge the debtor's liability on that additional tax; so in other words, the debtor does not bear the sanction as much as the unsecured creditors."

We therefore affirm the holding of the district court that the exaction under Section 72(t) is a "penalty" for purposes of determining priority in bankruptcy.

The next issue is whether the penalty is in compensation for actual pecuniary loss. Section 507(a)(7)(G) of the Bankruptcy Code grants priority to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss." 11 U.S.C. § 507(a)(7)(G). Appellants contend that "actual pecuniary loss" merely requires some monetary loss to the government, regardless of how much of it is recaptured through the penalty. They argue that since the government forgoes collection of taxes on contributions to pension plans until distribution from those plans is made, the government loses use of the funds and potential interest. Thus, the 10 percent addition is an attempt to recoup

lost revenue and is thus a pecuniary penalty.

The 10 percent penalty is assessed whenever an early withdrawal is made from a qualified pension plan, regardless of when the plan was established. The penalty is a flat rate penalty bearing no relationship to the direct financial loss of the government. This indicates an intent to punish, not to defray costs. We agree with the district court that this penalty is punitive in nature, and not entitled to priority under Section 507(a)(7)(G).

Accordingly, the order of the District Court for the District of Colorado is AFFIRMED.