In re Ray McCAIN and Ivory McCain.

**Mississippi Department of Agriculture and Commerce, Plaintiff,**

v.

**Ray McCain, Defendant.**

**Bankruptcy No. 98–12250.**
**Adversary No. 98–1273.**

United States Bankruptcy Court,
N.D. Mississippi.

Dec. 8, 1998.

Julie Swayze McLemore, Jackson, MS, for plaintiff.

Leon Johnson, Grenada, MS, for defendant.

### OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

This matter comes before the court on a motion for summary judgment filed in the above captioned adversary proceeding by the Mississippi Department of Agriculture and Commerce ("Department"); response thereto having been filed by the debtor/defendant, Ray McCain ("McCain"); and the court, having considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the subject matter of and the parties to this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (I).

### II.

The Mississippi Boll Weevil Management Act ("Act"), (Miss.Code Ann. § 69–37–1 et seq.) provides for a per acre assessment against cotton growers in the State of Mississippi to support a boll weevil eradication program. These assessments are collected by the Department and are used by the Commissioner of Agriculture towards the implementation of the eradication program. Calhoun and Grenada Counties, Mississippi, where McCain farms, are located in Region III as established by the Act. The registered cotton farmers in this Region voted and passed a referendum opting into the eradication program. An assessment of $24.00 per acre was established and a due date of August 1, 1997 was set. McCain farmed 204 acres of cotton in Calhoun County and 416 acres of cotton in Grenada County which were subject to the 1997 assessment. The Department sent McCain a statement for the amount due in the sum of $14,880.00.

McCain filed his Chapter 7 bankruptcy case on May 8, 1998. He listed the Department as a creditor holding a non-priority unsecured claim in the sum of $14,880.00 for the "boll weevil eradication program." The Department filed a timely complaint to deny the dischargeability of McCain's debt, contending that the assessment was non-dischargeable pursuant

to 11 U.S.C. § 523(a)(1)(A). McCain generally denied the allegations in the complaint. Subsequently, the Department filed its motion for summary judgment which is now before the court.

### III.

■ Section 523(a)(1)(A) excepts from discharge a tax of the kind described in § 507(a)(8). Section 507(a)(8) provides in part as follows:

> Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
>
> > (B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition.

Section 507(a)(8)(B) provides a priority for unsecured claims of governmental units which are in the nature of property taxes. Since governmental entities may be owed various obligations other than taxes, such as fines, penalties, fees, and general debt obligations, a threshold determination must be made as to whether the obligation it is truly a tax. Unfortunately, "tax" is not defined in the Bankruptcy Code. However, under the former Bankruptcy Act, the Supreme Court mandated that a court may not rely on the terminology contained in the statute which gives rise to the obligation, but must conduct an independent determination of whether the obligation is a true "tax" or merely a debt obligation. *City of New York v. Feiring*, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941); *United States v. New York*, 315 U.S. 510, 62 S.Ct. 712, 86 L.Ed. 998 (1942); *New Jersey v. Anderson*, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906).

Following the enactment of the Bankruptcy Code, the Supreme Court reiterated the need for the bankruptcy court to make an independent determination as to the true nature of the obligation. *United States v. CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996). In *CF & I Fabricators*, the court held that the use of the word "tax" in 26 U.S.C. § 4971(a) was not decisive in determining whether the obligation qualified as a priority tax under § 507(a)(8). The court stated that "a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the government." *United States v. CF & I Fabricators of Utah, Inc., Id.* (quoting *New Jersey v. Anderson*, 203 U.S. 483, 492, 27 S.Ct. 137, 51 L.Ed. 284 (1906)). In addition, the court noted that "[a] tax is an enforced contribution to provide for the support of government; a penalty...is an exaction imposed by statute as punishment for an unlawful act." *United States v. CF & I Fabricators of Utah, Inc., Id.* (quoting *United States v. La Franca*, 282 U.S. 568, 572, 51 S.Ct. 278, 75 L.Ed. 551 (1931)).

The Supreme Court has also had an opportunity to determine the distinction between a tax and a fee. In *National Cable Television Association v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974), the Supreme Court held, in a non-bankruptcy context, that a fee "is a charge levied by a governmental unit on something that bestows a benefit on the particular party that is not shared generally by other members of society." 4 *Collier on Bankruptcy*, ¶ 507.10[6][a] (15th ed. revised 1998). The chief distinction between a tax and a fee is that "a tax is an exaction for public purposes while a fee relates to an individual privilege or benefit to the payor." *United States v. River Coal Company*, 748 F.2d 1103, 1106 (6th Cir. 1984). In *River Coal*, a "reclamation fee" imposed on all operators of coal mines was found to be a tax rather than a fee. Since the fee was determined based on the tonnage produced by each particular coal mine operator, the burden of the fee was borne equally by all mine operators. In addition, the court noted that payment of the fee did not provide an individual benefit to any given coal operator which was not likewise conferred on the public at large.

■■■ In keeping with the aforementioned authorities, this court may not exclusively rely on the label given to a governmental obligation by the enabling statute. An independent review of the obligation must be undertaken to determine whether it is a tax or some other debt. To resolve this issue, the court must examine the nature of the obligation to see whether it has the characteristics of a tax:

> If the obligation that is imposed on all similarly situated property holders is mandatory, or is determined by reference to the value of the property, the obligation is more likely to be considered a tax. If it is voluntary or is determined with reference to particular benefits provided to the property owner, it is more likely to be considered a contractual obligation.

*4 Collier on Bankruptcy,* ¶ 507.10[3][a] (15th ed. revised 1998).

### IV.

The Act provides that the Commissioner of Agriculture will have a lien for any unpaid assessments, and that the lien shall have the same effect as an ad valorem property tax. For reference purposes, the applicable statutory authority is set forth as follows:

**§ 69–37–23. Liens to secure payment of assessments and penalties; destruction of untreatable commercial cotton as nuisance; compensation**

(1) In management areas where assessments are established by a passage of a referendum, the commissioner shall have a lien for payment of such assessments, together with any penalties levied under this chapter, against all cotton grown by each cotton grower who grows cotton within the area. This lien shall be of equal dignity with liens of taxes in favor of the state and the commissioner if authorized to issue executions for the collection of such assessments in like manner as executions are issued for ad valorem property taxes due the state.

### V.

The purpose of the Act is set forth in § 69–37–3 of the Mississippi Code, which provides as follows:

**§ 69–37–3. Purpose: liberal construction.**

> The Legislature has determined that the boll weevil is a public nuisance, a pest and a menace to the cotton industry. The purpose of this chapter is (a) to provide procedures through which cotton growers in various geographical regions in Mississippi may initiate boll weevil suppression, pre-eradication or eradication programs within their respective regions, (b) to provide for certification of a cotton growers organization to cooperate with state and federal agencies in the administration of cost-sharing programs for suppression, pre-eradication, or eradication of boll weevils in various cotton-growing regions in Mississippi, and (c) to empower the Mississippi Department of Agriculture and Commerce to promulgate and enforce regulations in support of such programs. This chapter should be construed liberally to achieve these purposes.

■■■ A tax is an exaction for public purposes while a fee connotes an individual benefit to the payor. Section 69–37–3 reveals that the purpose of the Act was to combat the proliferation of the boll weevil which was denominated as a "public nuisance." While an individual cotton farmer will certainly derive a direct benefit from eradication of the boll weevil, the benefit received is identical to that bestowed on all cotton farmers alike. This "across the board" benefit supports a finding that the assessment is a tax rather than a fee. An even broader benefit derived from the payment of the assessment is highlighted in the affidavit of Edwin Dyess, submitted in conjunction with the motion for summary judgment. Mr. Dyess, the Deputy Director of the Bureau of Plant Industry, a

regulatory division of the Department, makes the following observation:

> Eradication of the boll weevil will result in the elimination of the majority of pesticide applications to cotton crops. Frequently, the Bureau of Plant Industry receives complaints concerning pesticide applications drifting onto people's homes, onto wildlife and into the environment, including rivers, lakes, and streams. Such elimination will have an enormous impact on the environment by eliminating pesticide drift onto ground water and wildlife and will especially eliminate the exposure of humans living in heavily sprayed areas to pesticides. In addition, the eradication of the boll weevil benefits the state's economy as cotton growers see increased yields.

Affidavit of Edwin Dyess, dated September 29, 1998.

The allegation that the elimination of the boll weevil will benefit the populace and economy of the State of Mississippi, rather than merely the individual cotton growers who fund the eradication program, provides further support that the assessment is in the nature of a tax rather than a fee. The assessment levied on individual cotton farmers is calculated at $24.00 per acre of cotton grown. Accordingly, the burden of the assessment is borne by all cotton farmers equally. Furthermore, the benefit of the eradication of the boll weevil and a reduction in pesticide applications is enjoyed not just by the individual growers, but by every citizen of the State of Mississippi. Based on these facts, the court finds that the assessment levied under the Act is in the nature of a tax and is, therefore, nondischargeable under § 523(a)(1)(A) of the Bankruptcy Code, provided that the amount due was "last payable without penalty after one year before the date of the filing of the petition."

## VI.

As noted earlier, McCain filed his Chapter 7 petition on May 8, 1998. The Department alleged in its complaint that the unpaid assessment at issue became due on August 1, 1997. This allegation was generally denied in McCain's answer. In the motion for summary judgment, the Department again asserted that the assessment was due on August 1, 1997. McCain did not dispute this allegation in his response to the motion. Accordingly, the court finds as an undisputed fact that the assessment was due on August 1, 1997. This date is within one year of the bankruptcy filing.

McCain's assessment was calculated by multiplying the number of acres of cotton farmed by the statutory rate of $24.00 per acre. The assessment does not include any amount that could be considered a penalty. As such, the amount of the assessment is not in dispute.

## VII.

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Uniform Local Bankruptcy Rule 18. The court must examine each issue in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips v. OKC Corp.*, 812 F.2d 265 (5th Cir.1987); *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D.Miss.1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291 (5th Cir.1987), *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D.Miss.1987). An issue is genuine if "there is sufficient evi-

dence favoring the nonmoving party for a fact finder to find for that party." *Phillips,* 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips,* 812 F.2d at 272.

Having found that the assessment at issue in this case is a tax which was last payable within one year before the date of the filing of the Chapter 7 petition, and that the assessment does not include a penalty, the court finds that no genuine issues of material fact remain in dispute. The Department is entitled to a judgment as a matter of law.