In the Matter of Joel KLINE, Bankrupt.

UNITED STATES of America, INTERNAL REVENUE SERVICE, Appellant,

v.

Eugene M. FEINBLATT, Trustee, Appellee.

Bankruptcy No. 16086.

United States District Court, D. Maryland.

Nov. 20, 1975.

Richard F. Mitchell, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C. (Jervis S. Finney, U. S. Atty., and Daniel J. Hurson, Asst. U. S. Atty., Baltimore, Md., on the brief), for the Government.

Julian I. Jacobs, Baltimore, Md. (Lawrence D. Coppel and Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., on the brief), for the Trustee.

THOMSEN, Senior District Judge.

The United States, acting through the Internal Revenue Service (the government), filed a proof of claim against the bankrupt estate of Joel Kline for various taxes claimed to be due the government. The trustee in bankruptcy (the trustee) objected to those items (amounting to $410,726.88) which were based upon §§ 4941 and 4944 of the Internal Revenue Code of 1954, as amended by the Tax Reform Act of 1969 (IRC), on the ground that they were for "penalties" within the meaning of § 57j of the Bankruptcy Act, 11 U.S.C.A. § 93(j). After a hearing, the bankruptcy judge disallowed as penalties the claims based on §§ 4941 and 4944, but gave the government leave to file an amended proof of claim alleging pecuniary loss sustained by each act, transaction or proceeding out of which those claimed taxes arose. The government has appealed from that order.[1]

The parties have agreed that for the purposes of this appeal the following facts shall be considered to be true:

(I) that Joel Kline, the bankrupt, was a "substantial contributor" to the Ilene and Joel Kline Foundation, Inc. (the Foundation), within the meaning of § 507(d)(2) and § 4946(a)(2), IRC, and was during the taxable years in question a "foundation manager" of the Foundation, § 4946(b); for either of those reasons he was a "disqualified person" with

---

1. The government has also filed a claim alleging pecuniary loss in the amount of $27,660.80, "suffered by the government from self-dealing and jeopardizing activity". That claim has not been ruled upon by the bankruptcy judge, but it is agreed that it should not bar this appeal.

respect to his dealings with the Foundation, § 4946(a);

(II) that he engaged in "self-dealing" with the Foundation, § 4941(d);

(III) that he caused the Foundation to invest in such a manner as to jeopardize the carrying out of one or more of its exempt purposes, § 4944(a)(1) and (2); and

(IV) that he did not correct any of the acts described in (II) and (III) within the "correction period", as defined in § 4941(e)(4) and § 4944(e)(3).

Some or all of these assumptions are or may be challenged in a Tax Court proceeding, which has been stayed pending the decision of this appeal.[2] The orderly administration of justice will be advanced by this court making the assumptions set out above for the purposes of this decision.

\* \* \*

The Bankruptcy Act, by § 64a(4), 11 U.S.C.A. § 104(a)(4), gives "taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof" a priority over general creditors.

On the other hand, § 57j of the Act, 11 U.S.C.A. § 93(j), provides:

"Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose,

with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law."

The issue in this case is whether the assessments which are the basis of the government's claims in this bankruptcy proceeding are for "taxes" or for "penalties", as those terms are used in the Bankruptcy Act.

\* \* \*

Section 501(c)(3), IRC, as originally adopted in 1954, exempted from income taxes: "Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, \* \* \*" unless the exemption was denied by § 502, § 503 or § 504.

The Tax Reform Act of 1969 dealt in part with abuses which had arisen in connection with private foundations, including self-dealing between foundations and their respective founders, contributors, officers, directors and others. For reasons stated in committee reports,[3] discussed below, Congress enacted an elaborate series of provisions, codified as 26 U.S.C.A. §§ 4940 through 4948, to take the place of the then existing provisions of §§ 503 and 504,[4] which dealt inter alia with private foundations. The 1969 amendments imposed certain taxes

2. *Feinblatt, Receiver v. Commissioner*, Nos. 6926–74 to 6929–74 (filed Aug. 14, 1974).

3. H.Rep. No. 91–413, Ways and Means Comm., 91st Cong., 1st Sess., 2 U.S.Code Cong. & Admin. News, pp. 1645, 1664–89 (1969); S.Rep. No. 91–552, Finance Comm., 91st Cong., 1st Sess., id. at pp. 2027, 2052–90 (1969); Conference Rep. No. 91–782, 91st Cong., 1st Sess., id. at pp. 2392–2404 (1969).

4. Prior to 1969, §§ 503 and 504 imposed sanctions for violating the rules against improper transactions involving foundations. Section 503 provided that a foundation would lose its tax exempt status if it engaged in a "prohibited transaction" (defined in § 503(c)). Unless the transaction was for the purpose of diverting assets of the foundation from its exempt purposes, the loss of exemption dated only from the receipt of notification by the Internal Revenue Service. Charitable deductions were also to be disallowed for gifts to such a foundation from the end of the taxable year in which the prohibited transaction occurred (§ 503(e)).

Section 504 provided for the denial of tax-exempt status to foundations which accumulated unreasonable amounts of undistributed income, or for misapplication of such income.

on the foundations themselves, see §§ 4940, 4942–4945. Importantly for this case, § 4941 imposed taxes on individuals for self-dealing and § 4944 imposed taxes on individuals as well as on foundations for investments which jeopardize the charitable purpose of the foundation.

Section 4941(a)(1) imposes on a "disqualified person", as defined in § 4946(a), other than a foundation manager, as defined in § 4946(b), a tax of 5% of the amount involved in each act of "self-dealing", as defined in § 4941(d), between the disqualified person and a private foundation. Sec. 4941(a)(2) imposes a tax of 2½% on a "foundation manager" who knowingly participates in such a transaction.

Section 4941(b) imposes additional taxes on the disqualified person if the act of self-dealing is not corrected within a stated period—200% of the amount involved if the disqualified person is not a foundation manager, and 50% if he is.

Section 4944(a)(1) imposes on a private foundation a tax of 5% of any investment by the foundation which jeopardizes its exempt purposes; sec. 4944(a)(2) imposes an additional 5% tax on a foundation manager who participates in such an investment knowing that it jeopardizes the foundation's exempt purposes.

If the investment is not removed from jeopardy within a stated correction period, a further tax of 5% of the investment is imposed upon the foundation by § 4944(b)(1); any foundation manager who refuses to agree to remove part or all of the investment is subjected to a similar 5% tax by § 4944(b)(2).

The government has assessed "taxes" against Joel Kline, the bankrupt, as follows:

| Section | Amount |
| --- | --- |
| 4941(a)(1) | $ 16,658.40 |
| 4941(a)(2) | 9,204.20 |
| 4941(b)(1) | 341,560.80 |
| 4941(b)(2) | 18,750.00 |
| 4944(a)(2) | 4,895.08 |
| 4944(b)(2) | 19,658.40 |

The government claims a fourth level priority for all of those claims under § 64a(4) of the Bankruptcy Act, 11 U.S. C.A. § 104(a)(4) as "taxes". Kline's Trustee in Bankruptcy contends that those claims are for "penalties" within the meaning of § 57j of the Act, 11 U. S.C.A. § 93(j), rather than for taxes, and that none of them is allowable against the bankrupt estate.

\* \* \*

■■ Section 57j of the Bankruptcy Act implements a broad congressional policy against punishing the innocent creditors of a bankrupt. It accomplishes this purpose by providing that claims for "penalties" shall not be allowed against the bankrupt estate. *Simonson v. Granquist*, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962). However, "a satisfactory and clear-cut formula to separate penalties from non-penalties has not yet been agreed upon by the courts". 3 Collier on Bankruptcy (14th Ed. 1975), ¶ 57.22[2] at p. 387. The few cases which discuss the problem indicate that the main inquiry in determining whether or not an exaction is a penalty should be directed to the purpose of the particular enactment. *Simonson v. Granquist, supra; United States v. New York,* 315 U.S. 510, 516–517, 62 S.Ct. 712, 86 L.Ed. 998 (1942); *Meilink v. Unemployment Commission,* 314 U.S. 564, 62 S.Ct 389, 86 L.Ed. 458 (1942); *United States v. Childs,* 266 U.S. 304, 45 S.Ct. 110, 69 L. Ed.2d 299 (1924); *New York v. Jersawit,* 263 U.S. 493, 496, 44 S.Ct. 167, 68 L.Ed. 405 (1924); *United States v. Wagner,* 390 F.2d 13 (10 Cir. 1968); *United States v. Moore,* 366 F.2d 243 (5 Cir. 1966); *In re Caponigri,* 193 F. 291 (S.D.N.Y.1912) (L. Hand, D.J.).

The reports of the Senate and House Committees on the Tax Reform Act (see n. 3, above) show that Congress wished to discourage self-dealing with and improper investments by private foundations more effectively than the prior law had done. To accomplish this purpose new "taxes" were imposed by §§ 4941 and 4944 on the responsible individuals

involved. After analyzing typical abuses, the House Report stated:

"In order to minimize the need to apply subjective arm's-length standards, to avoid the temptation to misuse private foundations for noncharitable purposes, to provide a more rational relationship between sanctions and improper acts, and to make it more practical to properly enforce the law, your committee has determined to generally prohibit self-dealing transactions and to provide a variety and graduation of sanctions, as described below." [5] The punitive purpose is made even more clear by the graduated levels of the sanctions.

If Congress had also intended that the new provisions compensate the government for revenue lost because of the abuses, the graduated levels would have approximated or at least have borne some relation to, the amount of revenue lost by such conduct. Neither report contains an estimate of the revenue expected to result from the proposed amendments. Such an estimate is ordinarily included in the reports, and was included with respect to most if not all other provisions of the Tax Reform Act. The absence of such an estimate is another point in favor of treating the exactions under §§ 4941 and 4944(a)(2) and (b)(2) as penalties rather than taxes.

The government calls attention to § 6684, IRC, which provides:

"If any person becomes liable for tax under any section of chapter 42 (relating to private foundations) by reason of any act or failure to act which is not due to reasonable cause and either—

"(1) such person has therefore been liable for tax under such chapter, or

"(2) such act or failure to act is both willful and flagrant,

then such person shall be liable for a penalty equal to the amount of such tax."

The government argues that when Congress intended to impose a penalty it knew the language to employ, and that the various sections of Chapter 42 which are involved in this case refer to the exactions as "taxes" and not as "penalties", and should not be construed by this court to be penalties. However, as L. Hand, D. J., said *In re Caponigri, supra:*

"The position of the United States seems to me verbal in logic, unjust in result.

" * * * * * *

"The result would be unjust, because the words of the statute [§ 57j of the Bankruptcy Act] so plainly show the purpose of Congress not to exercise its sovereign right to a preference, except as the United States treasury has suffered. Nothing could be plainer. It would be unjust to thwart so plain a purpose through at best only verbal ambiguity." 193 F. at 292, 293.

The name given to the exaction by the legislature is not conclusive. *New Jersey v. Anderson,* 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906). As noted above, the Supreme Court cases agree that the purpose of the particular enactment is the controlling factor. An enactment which has as its purpose the punishment of conduct perceived as wrongful should be deemed a "penalty" under § 57j regardless of the terminology employed by the legislature. A measure which has as one of its substantial purposes the raising of revenue presents a more complex problem; in such a case, terminology may play an important role, *see United States v. Childs, supra; United States v. New York, supra.* In this case, however, the sole substantial purpose of §§ 4941 and 4944 was to penalize wrongful conduct. Although such

<hr />

5. 2 U.S.Code Cong. & Admin. News, 91st Cong., 1st Sess., at p. 1665. The Senate report was identical except for three non-essential words. Id. at p. 2055.

penalties are well justified to prevent abuses by foundation managers and other disqualified persons, it would fly in the face of the purpose of § 57j of the Bankruptcy Act to give such assessments a priority over the claims of entirely innocent creditors, except insofar as the government can show pecuniary loss. The decision of the bankruptcy judge permits the government to show such pecuniary loss; his decision should be and is hereby

*Affirmed.*