## ALABAMA SURFACE MINING COMMISSION, Appellant,

v.

## N.P. MINING COMPANY, INC., Defendant.

### No. CV91–PT–83–W.

United States District Court,
N.D. Alabama, W.D.

April 1, 1991.

William B. Ware & Grady M. McCarthy, Jr., Alabama Surface Min., Jasper, Ala., for appellant.

John P. Whittington, Bradley Arant Rose & White, David A. Larsen, Berkowitz Lefkovits Isom & Kushner, Birmingham, Ala., for defendant.

Ezra Kenneth Aycock, Jr., Hubbard Waldrop Reynolds Davis & McIlwain, Ronald L. Davis, Rosen Cook Sledge Davis Carroll Jones & Adcox, Tuscaloosa, Ala., for trustee.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes on to be heard on an appeal from an order of the Bankruptcy Court dated November 20, 1990. 124 B.R. 846. Pursuant to this court's order of March 19 (filed March 20), 1991, there is no factual dispute.[1] The issues to be decided by the court are purely legal. The following findings of the Bankruptcy Court are pertinent to this court's review of the Bankruptcy Court's conclusions of law.

On February 6, 1987, N.P. Mining Company, a privately owned corporation engaged in leasing, mining and selling coal, filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. The Debtor company continued to operate the mining facilities after relief was granted. However, on June 15, 1988, after pressures were exerted by creditors, a Chapter 11 Trustee was appointed.

---

**1.** Neither party has objected to the factual findings of the Bankruptcy Court.

The Trustee took control of the remnants of the business and served until April 14, 1989, when the case was converted to a Chapter 7 liquidation proceeding and a new Chapter 7 Trustee was appointed.

\* \* \* \* \* \*

N.P. Mining Company was a licensed and permitted surface coal mine operator under the state Surfacing Mining Control and Reclamation Act of 1981 (hereinafter the Reclamation Act), *Ala. Code* §§ 9–16–70 *et seq.*, (1975).

The Alabama Surface Mining Commission, administrator and enforcer of the above laws, had cited the mining operation for a wide variety of environmental violations, usually in the form of Notices of Violation. In many instances, the state agency issued Cessation Orders against the company.

\* \* \* \* \* \*

Cumulatively, the $2,349,100 the Commission seeks is the result of those mounting citations.

\* \* \* \* \* \*

On April 3, 1989, just before the case was converted from Chapter 11 to Chapter 7, the Alabama Surface Mining Commission filed a Motion for Administrative Expenses in the Chapter 11 case. That motion sought administrative priority for $2,349,100 in civil penalties stemming from violations of the Alabama Surface Mining Act and the Alabama Surface Mining Commission's Rules and Regulations.

Penalties were assessed to the Debtor between February 6, 1987, (date of filing of the Chapter 11 case) and April 14, 1989 (the date of the case's conversion to Chapter 7). It is uncontroverted that the monies sought by the Alabama Surface Mining Commission as administrative expenses are for civil penalties and not for any actual pecuniary loss suffered by or expenses incurred by the Alabama Surface Mining Commission. The total is unrelated to cost of correction of any violation.

It is also undisputed that all active mining operations had ceased by the appointment of the Chapter 11 Trustee on June 15, 1988. Only 20 of the penalties were assessed and issued against N.P. Mining before the trustee's appointment—for a total of $399,700, according to documents in the case.

\* \* \* \* \* \*

Ms. Weinard's affidavit contended that most of the penalties were actually based on pre-petition disturbances to the land and/or attached to pits that had not been mined since September of 1984. Ms. Weinard's affidavit contended that a total $296,850 of the $399,700 in pre-June 15, 1988, penalties were actually based in pre-petition mining activities.

\* \* \* \* \* \*

In the N.P. Mining case, the Court is being asked to grant civil penalties, computed on a mechanical formula based in the Alabama Code, and having no relation to any cleanup or reclamation costs, priority as Section 503(b)(1)(A) administrative expenses. Such status would place the State ahead in line of others who have unsecured claims against N.P. Mining Company's remaining assets.

\* \* \* \* \* \*

To acquire such status, the Commission must demonstrate that the costs it seeks, just as the Code provides, are necessary and actual costs and expenses of preserving the estate. The Commission has failed its burden of proof in this respect.

To begin with, only 20 of these penalties were issued for the period before the Trustee in the Chapter 11 case was appointed on June 15, 1988—after which all mining operations were shut down. Additionally, an affidavit indicates and the Alabama Surface Mining Commission's counsel has conceded that some of the violations had their roots in pre-petition violations. (Penalties were actually assessed after the Chapter 11 petition was filed in 1987 and before it was converted to Chapter 7 in 1989.) The record also reflects one affidavit alleging that some penalties were issued for violations in a

mining pit idled by a strike as early as 1984.

\*　　\*　　\*　　\*　　\*　　\*

The total $2,349,100 sought does not represent any actual cost. It represents no estimate of reclamation or any other operating capital expenditure of this Debtor's coal mining and coal brokering business. It represents no real cost of the Chapter 11 Trustee's management of that business or gathering of its assets. It reflects no actual cost or expenditure of the State of Alabama in connection with these violations. That is conceded by the Commission. The monetary civil penalties sought are solely punitive.

\*　　\*　　\*　　\*　　\*　　\*

However one views the policy imperatives behind enforcement of state environmental law, correction of these violations was not necessary to the preservation of this bankruptcy state or the operation of this coal mining business.

\*　　\*　　\*　　\*　　\*　　\*

The parties in the N.P. Mining case have agreed that the funds sought by the Commission are solely in the nature of civil penalties imposed as punishment and have nothing to do with costs of any kind. Nor has the Commission made any allegation that the violations involve hazardous materials or conditions that need immediate remedy.

\*　　\*　　\*　　\*　　\*　　\*

Then, when Toffel was appointed Chapter 11 Trustee, the floundering company was no longer mining coal. Its resources were severely limited. The Bankruptcy Court then authorized expenditure for some environmental work by an N.P. employee on the leased premises, but the Court did not approve any further payments from the bankruptcy estate. Therefore payment of $2,349,100 in cumulative fines cannot be considered a necessary expense of this company's operation.

\*　　\*　　\*　　\*　　\*　　\*

Former Chapter 11 Trustee Toffel told the Court that his mission as Trustee in N.P. Mining Company's last year before its conversion to Chapter 7 liquidation was to collect a $122,000 check from Scott Paper Co. and to spend as little as possible.

\*　　\*　　\*　　\*　　\*　　\*

When the State of Alabama Surface Mining Commission decided to assess these civil penalties, the mining operations of N.P. Mining Co. had long been shut down. By that point, payment would merely have emptied the coffers of the bankruptcy estate without curing any environmental problem left on land which was an asset of N.P. Mining. It certainly would not have "benefitted" or preserved this bankruptcy estate, the only valid purpose for which an administrative expense can be awarded under Section 503(b)(1)(A).

This court will not recount the Bankruptcy Judge's well considered legal conclusions. This court simply starts with the provisions of the admittedly controlling statutory provisions. Title 11 U.S.C. § 503(b)(1)(A) provides that:

(b) After notice and hearing, there shall be allowed administrative expenses, other than claims allowed under Section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

The only type penalty referred to in any provision of § 503 is a "tax" penalty. The above quoted language is explicit and clear. The appellant offered no proof below that the assessed penalties represent *actual, necessary costs and expenses* .... The other language of § 503 suggests that civil penalties other than tax penalties are not to be deemed as such.

Appellant relies significantly on *U.S. Dept. of Interior v. Elliott*, 761 F.2d 168 (4th Cir.1985). This court will not attempt to significantly rationalize *Elliott's* reasoning in that case, nor distinguish it here. The court does note that *nowhere* in *Elliott* does the court hold that the penalties represented "actual, necessary costs and

expenses of preserving the estate...." [2] Whether *Elliott* was correct under the statutory language there applicable, this court need not decide. This court does note that *Elliott* relied significantly on the Supreme Court "tax" penalty cases. Since the facts are not disputed and this court cannot disagree significantly with the Bankruptcy Court's conclusions of law, its judgment will be affirmed.

---

**2.** As early as 1804, Chief Justice Marshall, in *Pennington v. Coxe*, 6 U.S. (2 Cranch.) 33, 2 L.Ed. 199 stated, "That a law is the best expositor of itself...." In the 1812 case of *Schooner Paulina's Cargo v. U.S.*, he stated, "In construing these laws, it has been truly stated to be the duty of the court to effect the intention of the legislature." He goes on to say that this intention is primarily to be found "in the words which the legislature has employed to convey it." Further, that "It is the province of the court to apply the rule to the case thus explicitly described—not to some other case which judges may conjecture to be equally dangerous." This court cannot, for some "policy" reason(s), override the plain statutory language at issue here. For a *controlling* case which would appear to be inconsonant with *Elliott*, see *Matter of Unified Control Systems, Inc.*, 586 F.2d 1036 (5th Cir.1978). Also see *In the Matter of Kline*, 403 F.Supp. 974 (D.C.Md.1975), affirmed by the *Fourth Circuit* based upon the "scholarly opinion" of the trial court. *In re Kline*, 547 F.2d 823 (4th Cir.1977). This court cannot conclude that the "policy" argument with reference to allegedly non-innocent creditors somehow changes statutory language.