942 F.2d 1055
 68 A.F.T.R.2d 91-5684, 60 USLW 2177,
91-2 USTC P 50,419,
25 Collier Bankr.Cas.2d 591, 22 Bankr.Ct.Dec. 43,
Bankr. L. Rep. P 74,241,
14 Employee Benefits Cas. 1113
 In re The MANSFIELD TIRE & RUBBER COMPANY, Debtor.
UNITED STATES of America, Plaintiff-Appellant,
v.
The MANSFIELD TIRE & RUBBER COMPANY, Defendant,
Samuel Krugliak, Trustee; Richard L. Phillips, Trustee,
Defendants-Appellees.
 No. 90-4103.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 29, 1991.
Decided Aug. 28, 1991.
 
 Gary R. Allen, Acting Chief (briefed), Gary D. Gray, Kenneth W. Rosenberg (argued), U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, D.C. for U.S.
 David L. Simiele, Krugliak, Wilkins, Griffiths & Dougherty, Canton, Ohio, H. Jeffrey Schwartz (briefed), Jeremy Gilman (argued), Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for defendants-appellees.
 Before KENNEDY and JONES, Circuit Judges, and GIBSON, Chief District Judge.*
 KENNEDY, Circuit Judge.
 
 
 1
 In this case we are called upon to determine the priority to be afforded under the Bankruptcy Code to federal pension excise tax claims which have been challenged by the trustees.
 
 
 2
 In 1979, debtors Mansfield Tire and Rubber Company, Pennsylvania Tire and Rubber Company of Mississippi, Inc., and Pennsylvania Tire Company filed petitions for relief under chapter 11 of the United States Bankruptcy Code of 1978, Title 11 U.S.C. The United States filed a proof of claim asserting, inter alia, unsecured claims in the amount of $363,111.20 for the debtors' pension excise tax liability under section 4971(a) of the Internal Revenue Code, 26 U.S.C. § 4971(a). The United States contended that the excise tax liabilities are entitled to distributive priority under section 507(a)(7) of the Bankruptcy Code, 11 U.S.C. § 507(a)(7).[1]
 
 
 3
 The trustees objected to the pension excise tax proof of claim, asserting that the claim is not entitled to priority, as it constitutes a penalty rather than a tax, and that it should therefore be subordinated to the claims of general unsecured creditors pursuant to either 11 U.S.C. § 726(a)(4) or § 510(c). The trustees then filed a motion for summary judgment on the same grounds.
 
 
 4
 The Bankruptcy Court granted summary judgment in favor of the trustees. The court determined that the government's section 4971 claim was not eligible for priority under 11 U.S.C. § 507(a)(7)(E) and that the claim should be subordinated in distribution to the claims of general unsecured creditors pursuant to 11 U.S.C. § 510(c).
 
 
 5
 The District Court affirmed, 120 B.R. 862, agreeing that excise taxes under section 4971(a) are penalties rather than excise taxes for purposes of the Bankruptcy Code and thus were not entitled to the priority granted to excise taxes by section 507(a)(7)(E) of the Bankruptcy Code. Reasoning from its characterization of the government's claims as penalties, the District Court then held that it was proper to equitably subordinate those claims to those of general unsecured creditors pursuant to section 510(c) of the Bankruptcy Code.
 
 
 6
 The questions presented are (1) whether a federal excise tax imposed by section 4971(a) of the Internal Revenue Code is an "excise tax" entitled to priority under section 507(a)(7)(E) of the Bankruptcy Code and (2) whether a tax owed to the federal government may be equitably subordinated to other claims only upon a showing of inequitable conduct by the federal government. We answer both questions in the affirmative, and REVERSE.
 
 
 7
 The challenged claims stem from assessments made pursuant to 26 U.S.C. § 4971(a) resulting from the debtors' failure to meet minimum funding requirements for a pension plan. Section 4971 was enacted as part of ERISA in 1974 as a means of enforcing the minimum funding requirements of ERISA. The validity and amount of the assessments are not disputed by the trustees.
 
 
 8
 Section 4971 is located in Subtitle D of the Internal Revenue Code under the heading "Miscellaneous Excise Taxes." That section is captioned "Taxes on failure to meet minimum funding standards" and provides, in relevant part:
 
 
 9
 (a) Initial tax.--For each taxable year of an employer who maintains a plan to which section 412 applies, there is hereby imposed a tax of 10 percent ... on the amount of the accumulated funding deficiency under the plan, determined as of the end of the plan year ending with or within such taxable year.
 
 
 10
 ....
 
 
 11
 (e) Liability for tax.--
 
 
 12
 (1) In general.--... the tax imposed by subsection (a) or (b) shall be paid by the employer responsible for contributing to or under the plan the amount described in section 412(b)(3)(A).
 
 
 13
 26 U.S.C. § 4971.
 
 
 14
 The Bankruptcy Code, by section 507, provides for priority of certain claims in bankruptcy. It reads, in relevant part:
 
 
 15
 (a) The following expenses and claims have priority in the following order:
 
 
 16
 ....
 
 
 17
 (7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for--
 
 
 18
 ....
 
 
 19
 (E) an excise tax on--
 
 
 20
 (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of filing of the petition; or
 
 
 21
 (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition.
 
 
 22
 11 U.S.C. § 507(a)(7)(E).
 
 
 23
 The government's argument is a simple one: section 4971 assessments are "excise taxes"; section 507(a)(7)(E) says an "excise tax" is entitled to priority; therefore, section 4971 assessments are entitled to priority. The trustees argue that such assessments are actually penalties disguised as taxes and thus should not be given priority under section 507(a)(7)(E). Further, the trustees argue that the section 4971 assessments are nonpecuniary loss penalties, which should be subordinated to the claims of general unsecured creditors.
 
 
 24
 The trustees argue that those payments which Congress defined as "excise taxes" in the Internal Revenue Code are not necessarily "excise taxes" under the Bankruptcy Code. The trustees maintain that the government is not entitled to a priority distribution for its section 4971(a) claims because, despite its label as an "excise tax," section 4971 exacts nonpecuniary loss penalties as a matter of bankruptcy law. They maintain that section 4971 claims do not satisfy the four-part test used by the courts below for determining whether a particular governmental exaction is a "tax," which test we are urged to adopt.[2]
 
 
 25
 "The task of resolving the dispute over the meaning of [§ 507(a)(7)(E) ] begins where all such inquiries must begin: with the language of the statute itself." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). In Ron Pair, the Supreme Court held that where the language of the Bankruptcy Code is plain, " 'the sole function of the courts is to enforce it according to its terms.' " Id. (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). The statutory language held to have plain meaning in Ron Pair--a lengthy phrase in Bankruptcy Code § 506(b) containing several clauses--is undoubtedly less plain than the language we are presented with here, the term "excise tax."
 
 
 26
 Acknowledging that the government prevails if we apply the plain language of the Bankruptcy Code, the trustees contend that "[t]he bankruptcy laws, and the laws which affect them, must be construed so as to effectuate their fundamental purposes" and that "courts are empowered to look behind the labels affixed to statutes when those labels are inconsistent with overriding legislative objectives." The trustees argue that the purpose and legislative history of section 4971 reveal that its primary goal is to achieve punitive purposes and they point out that bankruptcy law looks with disfavor on nonpecuniary loss penalties. See 11 U.S.C. § 507(a)(7)(G); cf. Simonson v. Granquist, 369 U.S. 38, 40-41, 82 S.Ct. 537, 538-539, 7 L.Ed.2d 557 (1962) ("Enforcement of penalties against the estates of bankrupts ... would serve not to punish the delinquent taxpayer, but rather their entirely innocent creditors."). Therefore, the trustees maintain that to allow prioritization of the government's "penalty" claim is inimical to fundamental bankruptcy policy and thus we should construe the term "excise tax" in Bankruptcy Code section 507(a)(7)(E) so as not to include the excise taxes payable under 26 U.S.C. § 4971.
 
 
 27
 The Bankruptcy Code does not define "tax" or "excise tax" and therefore we are not persuaded that Congress intended to give a special bankruptcy-context meaning to those words. With respect to the regulatory nature of section 4971 excise taxes, Congress granted priority to excise tax claims without regard to whether their purpose was primarily regulatory. Indeed, many, if not most, of the excise taxes contained in Subtitles D and E of the Internal Revenue Code are intended to discourage undesirable conduct. We see no indication, either in the statute itself or in the legislative history underlying that provision, that Congress intended to deny priority to any federal excise tax.[3]
 
 
 28
 In urging their construction of section 507(a)(7)(E), the trustees argue that prioritizing the government's section 4971 claims "would afford them a distributive advantage not envisioned by the drafters of the Bankruptcy Code--an advantage whose ultimate cost would be borne by Mansfield's innocent creditors." We find this argument specious. Section 4971 was an existing federal excise tax at the time the Bankruptcy Code drafters used the term excise tax. Although the Bankruptcy Code does not define "tax" or "excise tax" it seems to us that when Congress said "excise tax" in section 507(a)(7)(E), Congress at the very least meant to include those exactions which Congress itself had previously deemed to be federal excise taxes.
 
 
 29
 With respect to the trustees' argument that the debtors' innocent creditors will bear the cost of prioritizing the government's claims, we needn't concern ourselves with that policy decision. Congress has already made that choice. Congress chose to prioritize a host of government tax claims, including excise taxes, despite the fact that a debtor's other "innocent creditors" could be left unfulfilled. Whatever general policy against giving priority to penalty debts may exist, Congress has chosen to give priority to excise taxes without distinguishing among them based upon a court's view of their purpose or nature. This Congress clearly may do.
 
 
 30
 While the plain language of legislation is not conclusive in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982), the trustees have not shown that this is one of those "rare cases."
 
 
 31
 We hold that where Congress has given unqualified priority to "excise tax[es]," as in 11 U.S.C. § 507(a)(7)(E), and Congress has deemed a particular federal exaction an "excise tax," as in 26 U.S.C. § 4971, we will not independently decide whether Congress meant "excise tax" when it said "excise tax." The District Court erred in undertaking to independently determine whether the tax due under section 4971 is in fact a tax for purposes of bankruptcy priority.[4]
 
 
 32
 We do not hold that any exaction deemed an excise tax by a body other than Congress is entitled to the same deference. In cases of state and local exactions it may be appropriate to more closely examine the particular governmental claim to determine whether it truly is in the nature of a "tax" as that term is used by Congress. This is because the question whether a particular exaction is a "tax" within bankruptcy law is a federal question. While a federal court may ultimately be called upon to decide the question where a state or local exaction is at issue, in this case we are concerned with a federal excise tax. Where Congress has exercised its constitutional power and deemed an exaction an "excise tax," the question has been answered.
 
 
 33
 The trustees rely on City of New York v. Feiring, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941), as the foundation for their argument that courts are free to determine for themselves whether a particular federal exaction is an "excise tax" within the meaning of the Bankruptcy Code. That reliance is untenable.
 
 
 34
 The issue presented in Feiring was "whether the obligation imposed upon sellers by a New York City sales tax ... is a 'tax' entitled to priority of payment" under section 64 of the Bankruptcy Act of 1898. Id. at 284, 61 S.Ct. at 1028.[5] In addressing that issue, the Court stated that "[w]hether the [New York City sales tax] is a 'tax' entitled to priority within the meaning of the statute is a federal question." Id. at 285, 61 S.Ct. at 1029 (citing New Jersey v. Anderson, 203 U.S. 483, 491, 27 S.Ct. 137, 139, 51 L.Ed. 284 (1906)). In light of the fact that what constitutes a "tax" within the Bankruptcy Act is a federal question, the Court went on to analyze the New York City sales tax at issue, determining that it was a tax as a matter of federal law and was entitled to priority under section 64.
 
 
 35
 Crucial to the Feiring Court's decision to look beyond the designation of the exaction as a "tax" was the Court's holding that section 64 of the Bankruptcy Act was "[i]ntended to be nationwide in its application [and] nothing in the language of § 64 or its legislative history suggests that its incidence is to be controlled or varied by the particular characterization by local law of the state's demand." Id. 313 U.S. at 285, 61 S.Ct. at 1029 (emphasis added). In other words, state and local governments may not promote their own claims within the federal priority scheme merely by characterizing them as "taxes."
 
 
 36
 The trustees and the Bankruptcy and District Courts below have failed to take account of the Supreme Court's reasoning. Consequently, they have extended the Supreme Court's holding that state and local exactions will be tested against a federal definition of "tax" for purposes of applying federal bankruptcy law to include testing those exactions which Congress itself has deemed to be taxes. The error in such an extension is illustrated when it is seen that such a holding transforms the above-quoted reasoning of the Feiring Court to read as follows: "Intended to be nationwide in its application, nothing in the language of [Bankruptcy Code § 507(a)(7)(E) ] or its legislative history suggests that its incidence is to be controlled or varied by the particular characterization by [Congress] of the [federal] demand." Id. at 285, 61 S.Ct. at 1029. We are unaware of any intent by Congress to have its own characterizations of payments as "taxes" subject to second-guessing by the federal courts. In summary, reliance on Feiring is misplaced where, as here, we are concerned with Congress' characterization of an exaction as an "excise tax."
 
 
 37
 The trustees also rely on In re Kline, 403 F.Supp. 974 (D.Md.1975), aff'd, 547 F.2d 823 (4th Cir.1977), and In re Unified Control Systems, Inc., 586 F.2d 1036 (5th Cir.1978). In those cases the courts held that excise taxes under 26 U.S.C. § 4941 were really penalties for purposes of determining their eligibility for priority distribution under the Bankruptcy Act. In our view those cases were wrongly decided to the extent that they held that the federal courts should look beyond the characterization of Congress to determine whether an exaction is a "tax" entitled to priority under federal bankruptcy law.
 
 The District Court in Kline held that
 
 38
 [t]he name given to the exaction by the legislature is not conclusive. New Jersey v. Anderson, 203 U.S. 483 [27 S.Ct. 137, 51 L.Ed. 284] (1906).... [T]he Supreme Court cases agree that the purpose of the particular enactment is the controlling factor. An enactment which has as its purpose the punishment of conduct perceived to be wrongful should be deemed a 'penalty' ... regardless of the terminology employed by the legislature.
 
 
 39
 Kline, 403 F.Supp. at 978. Reliance on Anderson and other Supreme Court decisions for the issue before us is based upon misreading the holdings of those cases.
 
 
 40
 Anderson concerned whether a New Jersey franchise tax was entitled to preferential treatment under section 64a of the Bankruptcy Act which provided priority for "all taxes legally due and owing by the bankrupt to the United States, state, county, [etc.]."[6] As a threshold matter, the Supreme Court noted that because it was applying and interpreting the federal bankruptcy statute, whether a particular debt to a governmental unit is a "tax" within the meaning of the Bankruptcy Act is a federal question. The Court then held that whether a debt is a "tax" within the Bankruptcy Act cannot be controlled by the label applied by a non-federal governmental unit. The reasoning in Anderson was tied to the fact that a state-defined "tax" was at issue.
 
 
 41
 Unfortunately, the Kline court and others have cut loose the Anderson holding from its moorings by reading the Anderson decision as giving license to question every debt which is labelled a "tax," even where the "tax" designation has been made by Congress. Similarly, in none of the other Supreme Court cases relied upon by the Kline court--Simonson, 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557; United States v. New York, 315 U.S. 510, 62 S.Ct. 712, 86 L.Ed. 998 (1962); Meilink v. Unemployment Reserves Comm'n, 314 U.S. 564, 62 S.Ct. 389, 86 L.Ed. 458 (1942); United States v. Childs, 266 U.S. 304, 45 S.Ct. 110, 69 L.Ed. 299 (1924); and New York v. Jersawit, 263 U.S. 493, 44 S.Ct. 167, 68 L.Ed. 405 (1923)--did the Court indicate that Congress' characterization of a federal exaction as a "tax" is not conclusive for purposes of bankruptcy.
 
 
 42
 The Fifth Circuit in Unified Control did not purport to rely on any cases concerning taxes and bankruptcy priorities for its conclusion that "the label placed upon an imposition in a revenue measure is [not] decisive in determining its character." 586 F.2d at 1037. However, the court did discuss the broad congressional policy against allowing priority for penalties because of the resulting punishment of innocent creditors, id. at 1038, quoting at length from the Supreme Court's decision in Simonson, 369 U.S. at 38, 82 S.Ct. 537, 7 L.Ed.2d 557, a case also relied upon by the trustees here. We find reliance on Simonson misplaced in this context. In that case the Supreme Court was interpreting section 57j of the Bankruptcy Act which held that "[d]ebts owing to the United States ... as a penalty or forfeiture shall not be allowed." It was undisputed in that case that the claims at issue were characterized as "penalties" by Congress. The Court, in an opinion of less than three full pages, simply applied the plain reading of 57j to the congressional characterization of the claims to find that the asserted claims were not allowed. Id. at 40, 82 S.Ct. at 538. Simonson does not support the proposition that the courts should or may disregard a congressional characterization of a payment as a tax when a court believes that it is actually a penalty.
 
 
 43
 The trustees also point out that in In re Jenny Lynn Mining Co., 780 F.2d 585 (6th Cir.), cert. denied, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986), and United States v. River Coal Co., 748 F.2d 1103 (6th Cir.1984), this Court looked beyond the characterization of certain payments to determine whether the payments were "taxes" for purposes of bankruptcy law. However, neither Jenny Lynn Mining nor River Coal concerned the issue presented in this case, nor do those cases suggest that we should independently decide whether that which Congress has designated a "tax" is a "tax" for bankruptcy purposes.
 
 
 44
 After finding that the government's claims were actually for nonpecuniary penalties rather than for taxes, the courts below proceeded to subordinate the section 4971 claims to those of general unsecured creditors pursuant to section 510(c) of the Bankruptcy Code, despite no allegation of inequitable conduct by the government. That section provides in part:
 
 
 45
 (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may--
 
 
 46
 (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest[.]
 
 
 47
 The District Court based its reasoning that inequitable conduct by the subordinated claimholder is not required on three cases: In re Colin, 44 B.R. 806 (Bankr.S.D.N.Y.1984) (subordination of punitive damage award); In re Virtual Network Services Corp., 902 F.2d 1246 (7th Cir.1990) (subordination of nonpecuniary loss tax penalties); and Schultz Broadway Inn v. United States, 912 F.2d 230 (8th Cir.1990) (subordination of nonpecuniary loss tax penalties). See also Burden v. United States, 917 F.2d 115 (3d Cir.1990) (subordination of nonpecuniary loss tax penalties). None of those cases, however, concerned the question presented here: whether claims for federal taxes, as opposed to tax penalties, may be equitably subordinated in the absence of some inequitable conduct on the part of the government. Therefore, whatever persuasive value those decisions may have had for a case concerning nonpecuniary loss penalties, they are inapposite here.
 
 
 48
 The trustees maintain that the legislative history surrounding section 510 supports the subordination of the government's claims here:
 
 
 49
 It is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts the development of this principle. To date, under existing law, a claim is generally subordinated only if the holder of such claim is guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, such as a penalty....
 
 
 50
 124 Cong.Rec. H11089 (Sept. 28, 1978) (statement by Rep. Edwards), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6452; 124 Cong.Rec. S17406 (Oct. 6, 1978) (statement by Sen. DeConcini), reprinted in 1978 U.S.Code Cong. & Admin.News 6505, 6521. However, we have already rejected the very premise upon which this argument is based in holding that section 4971 liabilities are not penalties but are excise taxes within the meaning of the bankruptcy code.
 
 
 51
 The trustees further argue that the District Court correctly exercised its equitable powers to subordinate the government's claim in this case because the "essential characteristic" of section 4971 is that of a penalty rather than a tax. The trustees contend that "[t]he mere labeling of a statute as a 'tax' cannot impair the bankruptcy court's exercise of its basic equitable powers--powers explicitly granted to it by Congress." In essence, the trustees ask us to find that Congress set out a specific and comprehensive set of priorities for payment of claims in section 507 and then intended to give bankruptcy courts in section 510(c) the power to disregard those priorities whenever the bankruptcy court's view of general equity differed from the statutory scheme. We reject that reading of section 510(c), which by its own terms is limited to "principles of equitable subordination." The legislative history makes clear that the use of that term was meant to codify "existing case law," leaving to the courts the development of the principle. We view the remarks in the legislative history that development of the principles of equitable subordination is left to the courts not as an invitation to abandon traditional principles, but as an acknowledgment that the common law is continually developing.
 
 
 52
 We continue to recognize that equitable subordination in bankruptcy may be appropriate if the claimholder is guilty of inequitable conduct or if the claim itself is of a status susceptible to subordination. We decline the appellees' invitation to extend equitable subordination under section 510(c) to include subordination of federal tax claims in the absence of some inequitable conduct on the part of the government because claims for federal taxes are not claims of a type which are otherwise "susceptible to subordination." The courts are not free to independently decide whether the "essential characteristic" of a federal exaction is that of a tax or a penalty in order to invoke equitable subordination. If Congress has decided that a particular levy is a "tax" rather than a "penalty," for purposes of priorities in bankruptcy the matter is settled.
 
 
 53
 Accordingly, the judgment of the District Court is REVERSED. The case is REMANDED to the Bankruptcy Court for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable Benjamin F. Gibson, Chief United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 That section was designated 507(a)(6) until 1984, when Congress inserted a superior category of claims as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333. The pre-amendment priority scheme is applicable in this case, which was filed prior to the amendment
 
 
 [2]
 Under the test, an exaction is a "tax" if it is:
 
 
 [1]
 An involuntary pecuniary burden, regardless of name, laid upon individuals or property;
 
 
 [2]
 Imposed by, or under authority of the legislature;
 
 
 [3]
 For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; and
 
 
 [4]
 Under the police or taxing power of the governmental unit
 The test was drawn from In re Lorber Industries of California, Inc., 675 F.2d 1062, 1066 (9th Cir.1982) (adopting the test articulated in In re Farmers Frozen Food Co., 221 F.Supp. 385, 387 (N.D. Cal.1963), aff'd, 332 F.2d 793 (9th Cir.1964)). Both Lorber (county sewer user fees) and Farmers (state agricultural assessments) concerned whether non-federal levies constituted "taxes" for purposes of federal bankruptcy priority. In addition, those cases did not concern exactions which had been labeled as "excise taxes." As we have indicated, infra, reliance on this line of cases in the context of a congressionally levied tax is inappropriate.
 
 
 [3]
 Although convinced that the plain and unambiguous language of the Bankruptcy Act supports our conclusion, we also note that the legislative history is in accord. With respect to the priority granted to "excise taxes," the history indicates that "[a]ll Federal ... taxes generally considered or expressly treated as excises are covered by this category." 124 Cong.Rec. 32398, 32416 (1978) (Rep. Edwards); 124 Cong.Rec. 33998, 34016 (1978) (Sen. DeConcini) (joint floor statements). There is no question but that Congress has expressly treated the section 4971 exaction as an "excise tax." It is referred to as a "tax" in the language of the section itself and is contained within Subtitle D of the Internal Revenue Code, entitled "Miscellaneous Excise Taxes."
 Because no formal conference was held in connection with the enactment of the Bankruptcy Reform Act of 1978, the legislative statements of the sponsors serve in place of a conference committee report. See generally Kennedy, Foreword: A Brief History of the Bankruptcy Reform Act, 58 N.C.L.Rev. 667, 676-77 (1980). The statements are treated as persuasive evidence of Congressional intent. Begier v. I.R.S., --- U.S. ----, 110 S.Ct. 2258, 2266 n. 5, 110 L.Ed.2d 46 (1990).
 
 
 [4]
 The trustees also point out that the priority granted under section 507(a)(7)(E) extends only to excise taxes on "transactions." They contend that the failure to meet the minimum funding requirements for a pension plan does not constitute such a "transaction." We find no merit to this argument
 
 
 [5]
 That section of the Bankruptcy Act afforded distributive priority to " 'taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof....' " Feiring, 313 U.S. at 285, 61 S.Ct. at 1029
 
 
 [6]
 Bankruptcy Act of 1898 § 64a, 30 Stat. at L. 563, chap. 541, U.S.Comp.Stat.1901, p. 3447