WYNN, Circuit Judge,
concurring:
I.
I concur in Judge Motz’s fíne opinion holding that the Anti-Injunction Act applies to this case. I therefore agree that it should be remanded to the district court for dismissal.
I note that my distinguished colleague, after vigorously dissenting from the majority’s holding that the AIA applies, chose to exercise his prerogative to address the merits.[1] While I think that his position on the Commerce Clause is persuasive, were I to reach the merits, I would uphold the constitutionality of the Affordable Care Act on the basis that Congress had the authority to enact the individual and employer mandates under its plenary taxing power.[2] However, my conclusion that the mandates are (constitutional) taxes inevitably leads back to the AIA’s bar to this case.
II.
A.
Plaintiffs contend that “[t]he Taxing and Spending or General Welfare Clause does not vest Congress with the authority to enact the mandates.” Opening Brief of Appellants Liberty University, Michele G. Waddell and Joanne V. Merrill at 40, Liberty Univ. v. Geithner, No. 10-2347. I disagree. The individual and employer mandate provisions are independently authorized by Congress’s constitutional pow *416 er to “lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States.... ” U.S. Const. art. I, § 8, cl. 1.
“A tax, in the general understanding of the term, and as used in the Constitution, signifies an exaction for the support of the government.” United States v. Butler, 297 U.S. 1, 61, 56 S.Ct. 312, 80 L.Ed. 477 (1936). Stated differently, a tax is a “pecuniary burden laid upon individuals or property for the purpose of supporting the government.” United States v. New York, 315 U.S. 510, 515-16, 62 S.Ct. 712, 86 L.Ed. 998 (1942) (quoting New Jersey v. Anderson, 203 U.S. 483, 492, 27 S.Ct. 137, 51 L.Ed. 284 (1906)).
Before analyzing whether the exactions in question were authorized under Congress’s taxing power, it is useful first to clarify that neither an exaction’s label nor its regulatory intent or effect is germane to the constitutional inquiry. To determine whether an exaction constitutes a tax, the Supreme Court has instructed us to look not at what an exaction is called but instead at what it does. Nelson v. Sears, Roebuck & Co., 312 U.S. 359, 363, 61 S.Ct. 586, 85 L.Ed. 888 (1941) (stating that when “passing on the constitutionality of a tax law,” a court is “ ‘concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it’ ”) (quoting Lawrence v. State Tax Comm’n, 286 U.S. 276, 280, 52 S.Ct. 556, 76 L.Ed. 1102 (1932)); see also United States v. New York, 315 U.S. at 515-16, 62 S.Ct. 712 (stating that an exaction meeting the definition of a tax will be construed as such regardless of “whatever name it may be called”). This makes sense, given that the Constitution itself uses four different terms to refer to the concept of taxation: taxes, imposts, duties, and excises. U.S. Const. art. I, § 8, cl. 1.[3]
Accordingly, the Supreme Court has characterized legislative acts as “taxes” without regard to the labels used by Congress. See, e.g., United States v. Sotelo, 436 U.S. 268, 275, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978) (deeming an exaction labeled a “penalty” in the Internal Revenue Code a tax for bankruptcy purposes); License Tax Cases, 72 U.S. (5 Wall.) 462, 470-71, 18 L.Ed. 497 (1866) (sustaining under the taxing power a federal statute requiring the purchase of a license before engaging in certain businesses and stating that “the granting of a license ... must be regarded as nothing more than a mere form of imposing a tax”); see also In re Leckie Smokeless Coal Co., 99 F.3d 573, 583 (4th Cir.1996) (holding that, for purposes of the AIA, “premiums” constituted taxes).
Further, a tax—regardless of its label— “does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed.” United States v. Sanchez, 340 U.S. 42, 44, 71 S.Ct. 108, 95 L.Ed. 47 (1950). As long as a statute is “productive of some revenue,” Congress may exercise its taxing power without “collateral inquiry as to the measure of the regulatory effect [of the statute in question].” Sonzinsky v. United States, 300 U.S. 506, 514, 57 S.Ct. 554, 81 L.Ed. 772 (1937). And if “the legislation enacted has some reasonable relation to the exercise of the taxing authority conferred by the Constitution, it cannot be invalidated because of the supposed motives which induced it.” *417 United States v. Doremus, 249 U.S. 86, 93, 39 S.Ct. 214, 63 L.Ed. 493 (1919).
I recognize that some cases from the 1920s and 1930s suggest that taxes are either regulatory or revenue-raising and that the former are unconstitutional. See, e.g., Bailey v. Drexel Furniture Co., 259 U.S. 20, 37-44, 42 S.Ct. 449, 66 L.Ed. 817 (1922) (holding that a tax on goods made by child labor was an unconstitutional penalty). However, both older and newer opinions indicate that the revenue-versus-regulatory distinction was short-lived and is now defunct. See, e.g., United States v. Kahriger, 345 U.S. 22, 28, 73 S.Ct. 510, 97 L.Ed. 754 (1953) (upholding tax on bookmakers and stating, “It is conceded that a federal excise tax does not cease to be valid merely because it discourages or deters the activities taxed.”), overruled in part on other grounds, Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Sonzinsky, 300 U.S. at 514, 57 S.Ct. 554 (1937 case upholding a tax on firearm dealers despite registration provision and alleged regulatory effects); Doremus, 249 U.S. at 95, 39 S.Ct. 214 (1919 case upholding the Narcotic Drugs Act, which taxed and regulated sales of narcotics); McCray v. United States, 195 U.S. 27, 59, 24 S.Ct. 769, 49 L.Ed. 78 (1904) (upholding tax on colored margarine and stating, “Since ... the taxing power conferred by the Constitution knows no limits except those expressly stated in that instrument, it must follow, if a tax be within the lawful power, the exertion of that power may not be judicially restrained because of the results to arise from its exercise.”).
It is not surprising that this distinction did not endure, given that taxes can, and do, both regulate and generate revenue at the same time. Indeed, as the Supreme Court recognized in Sonzinsky, “[ejvery tax is in some measure regulatory. To some 'extent it interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any less a tax because it has a regulatory effect....” 300 U.S. at 513, 57 S.Ct. 554. And “[i]n like manner every rebate from a tax when conditioned upon conduct is in some measure a temptation. But to hold that motive or temptation is equivalent to coercion is to plunge the law in endless difficulties.” Chas. C. Steward Mach. Co. v. Davis, 301 U.S. 548, 589-90, 57 S.Ct. 883, 81 L.Ed. 1279 (1937). Accordingly, in Bob Jones University v. Simon, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), the Supreme Court recognized that, while in some early cases it “drew what it saw at the time as distinctions between regulatory and revenue-raising taxes,” the Court “subsequently abandoned such distinctions.” Id. at 741 n. 12, 94 S.Ct. 2038, overruled in part on other grounds by South Carolina v. Regan, 465 U.S. 367, 379, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984).
Courts, therefore, do not look to labels, regulatory intent, or regulatory effect. Instead, we must consider whether something that operates as a tax is authorized under Congress’s taxing power, which has been described as “very extensive,” License Tax Cases, 72 U.S. at 471, and indeed “virtually without limitation.” United States v. Ptasynski 462 U.S. 74, 79, 103 S.Ct. 2239, 76 L.Ed.2d 427 (1983). As Justice Cardozo recognized in Helvering,
The discretion [to tax and spend for the general welfare] belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, [or] not an exercise of judgment. This is now familiar law.
“When such a contention comes here we naturally require a showing that by no reasonable possibility can the challenged legislation fall within the wide *418 range of discretion permitted to the Congress.”
301 U.S. at 640-41, 57 S.Ct. 904 (quoting Butler, 297 U.S. at 67, 56 S.Ct. 312).
There are essentially three features that a tax must exhibit to be constitutional. First, to pass constitutional muster, a tax must bear “some reasonable relation” to raising revenue. Doremus, 249 U.S. at 93, 39 S.Ct. 214. The amount of revenue raised is irrelevant: A tax does not cease to be one “even though the revenue obtained is obviously negligible, or the revenue purpose of the tax may be secondary.” Sanchez, 340 U.S. at 44, 71 S.Ct. 108 (citations omitted). Instead, the measure must simply be “productive of some revenue.” Sonzinsky, 300 U.S. at 514, 57 S.Ct. 554 (upholding tax that raised $5,400 in revenue in 1934).
Second, to be constitutional, a tax must be imposed for the general welfare. Congress enjoys wide discretion regarding what is in the general welfare. “The discretion ... is not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment.” Helvering, 301 U.S. at 640, 57 S.Ct. 904. Therefore, in determining whether a congressional enactment furthers the general welfare, “courts should defer substantially to the judgment of Congress.” South Dakota v. Dole, 483 U.S. 203, 207, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987).
Finally, even if an exaction is rationally related to raising revenue and furthers the general welfare, to be constitutional, it must not infringe upon another constitutional right. For example, a tax may not infringe on an individual’s right to be free from double jeopardy by further punishing criminal conduct. See Dep’t of Revenue of Montana v. Kurth Ranch, 511 U.S. 767, 780-83, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (concluding that a drug tax was actually a criminal penalty based on its high rate, its deterrent purpose, and a criminal prohibition on the taxed activity and holding that the tax consequently violated the Double Jeopardy Clause of the Fifth Amendment).
B.
Turning now to the case at hand, the provisions at issue are the exaction provisions in the individual and employer mandates. I would conclude, after examining their practical operation, that these provisions impose taxes.
The individual mandate exaction in 26 U.S.C. § 5000A(b) amends the Internal Revenue Code to provide that a non-exempted individual who fails to maintain a minimum level of insurance must pay a “penalty.” Notably, while the individual mandate in some places uses the term “penalty,” some form of the word “tax” appears in the statute over forty times. 26 U.S.C. § 5000A. For example, it references taxpayers and their returns, includes amounts due under the provision in the taxpayer’s tax return liability, calculates the penalty by reference to household income for tax purposes, and allows the Secretary of the Treasury to enforce the provision like other taxes (with several procedural exceptions). Id. Yet, as explained above, the label applied to an exaction is irrelevant; instead, in assessing an exaction’s constitutionality, we look to its practical operation.
The practical operation of the individual mandate provision is as a tax. Individuals who are not required to file income tax returns are not required to pay the penalty. Id. § 5000A(e)(2). The amount of any penalty owed is generally calculated by reference to household income and reported on an individual’s federal income tax *419 return. Id. § 5000A(b)-(c).[4] Taxpayers filing jointly are jointly liable for the penalty. Id. § 5000A(b)(3)(B). And the Secretary of the Treasury is empowered to enforce the provision like a tax, albeit with several procedural exceptions.[5] Id. § 5000A(g). The individual mandate exaction, codified in the Internal Revenue Code, therefore functions as a tax.
Looking next at the employer mandate exaction in 26 U.S.C. § 4980H, it amends the Internal Revenue Code to impose an “assessable payment” on large employers if a health exchange notifies the employer that at least one full-time employee obtains a premium tax credit or cost-sharing reduction. Id. § 4980H(a)-(b). The amount of the assessable payment is calculated differently based on whether the employer offers adequate health insurance coverage to its employees. Id. § mandate uses the terms “assessable payment” and “tax.” Id. § 4980H(b). Like the individual mandate exaction, the practical operation of this provision is as a tax that is assessed and collected in the same manner as other Internal Revenue Code penalties treated as taxes.[6] Id. § 4980H(d).
Having concluded that the individual and employer mandates operate as taxes,[7] to determine whether they are constitutional, I must consider whether they: 1) are reasonably related to raising revenue; 2) serve the general welfare; and 3) do not infringe upon any other right.
The individual and employer exactions are surely related to raising revenue. The Congressional Budget Office estimated that the individual mandate exaction will generate approximately $4 billion annually, and the employer mandate exaction, $11 billion annually, by 2019. Letter from Douglas W. Elmendorf, Dir., Cong. Budget Office, to Hon. Nancy Pelosi, Speaker, U.S. House of Representatives, tbl. 4 (Mar. 20, 2010), available at http://www.cbo.gov/ ftpdocs/113xx/docll379/AmendReconProp. pdf; see also Patient Protection and Affordable Care Act, Pub.L. No. 111-148, § 1563(a), 124 Stat. 119, 270 (stating that the Affordable Care Act “will reduce the Federal deficit”). Not only will the exactions raise significant amounts of revenue, but the revenue raised can cover the “[hjigher government costs attributable to the uninsured ... implicitly paid for by *420 the insured ... through increased taxes or reductions in other government services as money is spent on the uninsured.” Brief Amici Curiae of Economic Scholars in Support of Defendants-Appellees at 13, Liberty Univ. v. Geithner, No. 10-2347. In other words, as Judge Davis notes in his opinion, “[b]eeause the uninsured effectively force the rest of the nation to insure them with respect to basic, stabilizing care, this penalty is something like a premium paid into the federal government, which bears a large share of the shifted costs as the largest insurer in the nation.” Post at 446. Clearly, then, the exactions bear “some reasonable relation” to raising revenue. Doremus, 249 U.S. at 93, 39 S.Ct. 214. See also Sonzinsky, 300 U.S. at 514, 57 S.Ct. 554 (upholding tax that raised $5,400 in revenue).
Further, the individual and employer mandate exactions serve the general welfare. The Affordable Care Act is aimed at, among other things, reducing the number of the uninsured as well as the cost of those who remain uninsured imposed on those who are insured. Congress found that, nationwide, hospitals provided $43 billion in uncompensated care to the uninsured in 2009 and that these costs were shifted onto insured individuals, “increasing] family premiums by on average over $1,000 a year.” 42 U.S.C. § 18091(a)(2)(F). It also found that “[b]y significantly reducing the number of the uninsured, the [individual mandate], together with the other provisions of th[e] Act, will lower health insurance premiums.” Id. By encouraging individuals to purchase health insurance and employers to provide it, the individual and employer mandates alleviate the costs associated with providing uncompensated care to the uninsured and lower health insurance premiums. Such cost reductions and expansions in access to health insurance surely constitute contributions to the general welfare.
Finally, neither the exaction in the individual mandate nor that in the employer mandate infringes on other rights. The exactions do not, for example, operate to impose duplicative criminal penalties in violation of the prohibition against double jeopardy. See Kurth Ranch, 511 U.S. at 780-83, 114 S.Ct. 1937 (“Taxes imposed upon illegal activities are fundamentally different from taxes with a pure revenue-raising purpose that are imposed despite their adverse effect on the taxed activity.”). The provisions lack the punitive character of other measures the Supreme Court has held to be penalties. Id.; see also, e.g., Bailey, 259 U.S. at 36, 42 S.Ct. 449. And the provisions do not appear to violate any other rights: No one has a right to be free from taxation.[8]
C.
It bears mention that the individual and employer mandate exactions do not run afoul of the constitutional requirement that “[n]o Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken.” U.S. Const. art. I, § 9, cl. 4. This clause has its origins in the Constitutional Convention’s slavery debates. The Northern states consented to count a slave as three-fifths of a person for allocating representatives in Congress in exchange for a corresponding increase in the tax liability of Southern states. Brian Galle, The Taxing Power, the Affordable Care *421 Act, and the Limits of Constitutional Compromise, 120 Yale L.J. Online 407, 414 (Apr. 5, 2011), http://yalelawjournal.org/ 2011/4/5/galle.html. Even at that time, the definition of “direct” tax was unclear. Id.; Springer v. United States, 102 U.S. 586, 596, 26 L.Ed. 253 (1880) (“It does not appear that an attempt was made by any one to define the exact meaning of the language employed.”).
It is therefore understandable that the Supreme Court has demonstrated reluctance to strike a tax based solely on the direct/indirect distinction. See Knowlton v. Moore, 178 U.S. 41, 83, 20 S.Ct. 747, 44 L.Ed. 969 (1900) (“[I]t is no part of the duty of this court to lessen, impede, or obstruct the exercise of the taxing power by merely abstruse and subtle distinctions as to the particular nature of a specified tax, where such distinction rests more upon the differing theories of political economists than upon the practical nature of the tax itself.”) (quoting Nicol v. Ames, 173 U.S. 509, 515, 19 S.Ct. 522, 43 L.Ed. 786 (1899)). Indeed, the Supreme Court restricted the meaning of “direct” taxes to capitation, or head taxes, and taxes on the ownership of real property. Springer, 102 U.S. at 602; Veazie Bank v. Fenno, 75 U.S. (8 Wall.) 533, 544, 19 L.Ed. 482 (1869). Taxes on personal property have also been held to be direct. Pollock v. Fatmers’ Loan & Trust Co., 158 U.S. 601, 637, 15 S.Ct. 912, 39 L.Ed. 1108 (1895), superseded on other grounds by constitutional amendment, U.S. Const. amend. XVI, as recognized in Brushaber v. Union Pac. R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493 (1916).
The Supreme Court has never struck down a federal tax as an unapportioned capitation tax. And the Supreme Court has repeatedly upheld a variety of federal taxes as indirect and therefore outside the apportionment requirement. See Knowlton, 178 U.S. at 83, 20 S.Ct. 747 (upholding a federal estate tax); Bromley v. McCaughn, 280 U.S. 124, 138, 50 S.Ct. 46, 74 L.Ed. 226 (1929) (upholding a federal gift tax); United States v. Mfrs. Nat’l Bank of Detroit, 363 U.S. 194, 199, 80 S.Ct. 1103, 4 L.Ed.2d 1158 (1960) (upholding a federal estate tax collected on an insurance policy). As the Supreme Court has explained, “[a] tax laid upon the happening of an event, as distinguished from its tangible fruits, is an indirect tax which Congress undoubtedly may impose.” Tyler v. United States, 281 U.S. 497, 502, 50 S.Ct. 356, 74 L.Ed. 991 (1930).
The individual and employer mandate exactions are not capitation taxes; nor are they direct taxes that must be apportioned. Far from being imposed without regard to circumstance, they will be imposed only upon taxpayers who can afford, but fail to maintain, health insurance, or upon employers who fail to provide adequate and affordable insurance. See 26 U.S.C. §§ 4980H, 5000A. As taxes “laid upon the happening of an event,” the individual and employer mandate exactions are clearly indirect. See Tyler, 281 U.S. at 502, 50 S.Ct. 356. Nor are they property taxes, since they will not be assessed based on the ownership of property.
Indeed, the Supreme Court has so limited the application of the Direct Tax Clause that the Sixth Circuit concluded that it “relates solely to taxation generally for the purpose of revenue only, and not impositions made incidentally under the commerce clause exerted either directly or by delegation, as a means of constraining and regulating what may be considered by the Congress as pernicious or harmful to commerce.” Rodgers v. United States, 138 F.2d 992, 995 (6th Cir.1943). Since the individual and employer mandate exactions are neither capitation nor property taxes, the Direct Tax Clause is inapplicable, and *422 the individual and employer mandate taxes stand.
III.
In sum, I concur in Judge Motz’s fíne opinion holding that the AIA applies here. Our distinguished colleague vigorously dissents from our holding and presents a credible basis for upholding the constitutionality of the Affordable Care Act under the Commerce Clause. However, were I to rule on the merits, for the reasons given in this opinion, I would uphold the constitutionality of the Affordable Care Act on the basis that Congress had the authority to enact the individual and employer mandates, which operate as taxes, under its taxing power. Accordingly, I must agree with Judge Motz that the AIA bars this suit.

. The majority opinion vacates the district court’s decision and remands plaintiffs’ lawsuit for dismissal. Judge Davis dissents from the majority's dismissal of plaintiffs’ suit on AIA grounds; nonetheless, on the merits, he, too, would dismiss plaintiffs’ lawsuit.

. Justices and judges have previously spoken on the merits after stating that the court lacked jurisdiction; my approach today is therefore nothing new. See Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., —U.S.—, 130 S.Ct. 1758, 1777, 176 L.Ed.2d 605 (2010) (Ginsburg, J., dissenting) ("The Court errs in addressing an issue not ripe for judicial review. ... I would dismiss the petition as improvidently granted. Were I to reach the merits, I would adhere to the strict limitations the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., places on judicial review of arbitral awards. § 10. Accordingly, I would affirm the judgment of the Second Circuit, which rejected petitioners' plea for vacation of the arbitrators’ decision.”); Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 23, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring in the judgment) ("Were I to reach the merits I would reverse for the reasons stated in the concurring opinions of Justices Brennan and Stevens, in which I join. But I can find no basis for the District Court's unwarranted assumption of jurisdiction over the subject matter of this lawsuit, and upon that ground alone I would reverse the decision below.”); Veterans for Common Sense v. Shinseki, 644 F.3d 845, 900 (9th Cir.2011) (Kozinski, J., dissenting) (determining that court lacked jurisdiction but also, analyzing claims on their merits); Patel v. Holder, 563 F.3d 565, 569 (7th Cir.2009) (majority opinion doing same); cf. Helvering v. Davis, 301 U.S. 619, 639-40, 57 S.Ct. 904, 81 L.Ed. 1307 (1937) (noting the belief of Justices Cardozo, Brandéis, Stone, and Roberts that the case should be dismissed but nevertheless reaching the merits in an opinion authored by Justice Cardozo).

. Congress also does not have to invoke the source of authority for its enactments. "The question of the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise.” Woods v. Cloyd W. Miller Co., 333 U.S. 138, 144, 68 S.Ct. 421, 92 L.Ed. 596 (1948).

. The statute prescribes monthly penalties in an amount calculated by identifying a specified "percentage of the excess of the taxpayer's household income for the taxable year over the amount of gross income specified in section 6012(a)(1)” unless that calculation produces an amount that is less than certain statutorily defined thresholds. 26 U.S.C. § 5000A(c)(2). Ultimately, the penalty owed by a taxpayer is equal to the lesser of either the sum of the monthly penalties owed by the taxpayer or the cost of the "national average premium for qualified health plans which have a bronze level of coverage, provide coverage for the applicable family size involved, and are offered through Exchanges for plan years beginning in the calendar year with or within which the taxable year ends.” Id. § 5000A(c)(l).

. The fact that Congress considered it necessary to exempt the individual mandate exaction from some traditional tax collection procedures like criminal liability and liens evidences that the exaction is a tax. 26 U.S.C. § 5000A(g)(2). Otherwise, there would be no need to except the exaction from some of the standard tax collection procedures, which otherwise apply.

. No exceptions to the standard collection procedures exist in the case of the employer mandate. 26 U.S.C. § 4980H(d).

. Since the Supreme Court long ago established that Congress did not have to invoke the word "tax" to act within its taxing power, Congress’s use of other verbiage in portions of the individual and employer mandates, and most notably in the "penalty” provision of the individual mandate, sheds little light on Congressional intent. See Nelson, 312 U.S. at 363, 61 S.Ct. 586.

. Additionally, any contention that the individual mandate violates either the First, Fifth, or Tenth Amendment is, in my opinion, merit-less. See post at 450-52; Florida ex rel. Atty. Gen. v. U.S. Dep’t of Health & Human Servs., 648 F.3d 1235, 1361-65 (11th Cir.2011) (Marcus, J., dissenting).